STATE of Utah, Plaintiff and Appellant,

v.

Walter B. KELBACH and Myron D. Lance, Defendants and Respondents.

No. 15060.

Supreme Court of Utah.

Sept. 9, 1977.

---

5. Utah, 545 P.2d 513 (1976).

6. Utah, 565 P.2d 408 (1977).

7. 122 Utah 43, 245 P.2d 1176.

Robert B. Hansen, William T. Evans, William W. Barrett, R. Paul VanDam, Salt Lake City, for plaintiff-appellant.

James R. Soper, Salt Lake City, for defendants and respondents.

CROCKETT, Justice:

The state appeals to challenge the propriety of sentencing the defendants to life imprisonment instead of death upon their conviction of first degree murder. Defendants move to dismiss on the ground that no such appeal by the state is authorized by law.

■ Defendants argue that the only appeal permitted the state in criminal cases is as stated in Sec. 77–39–4, U.C.A.1953:

Appeal by state, in what cases.—An appeal may be taken by the state:

(1) From a judgment of dismissal in favor of the defendant upon a motion to quash the information or indictment.

(2) From an order arresting judgment.

(3) From *an order made after judgment affecting the substantial rights of the state.*

(4) From an order of the court directing the jury to find for the defendant.

If we accept defendants' premise: that the only authorization for an appeal by the state must derive from the above-quoted statute, the right of appeal must be found in subsection (3).

The question then arises: whether the sentence is "an order made after judgment," as distinguished from the judgment itself. It is true that the jury verdict and the judgment entered thereon, whether of guilty or not guilty, is sometimes spoken of as "the judgment" in a criminal case. If that constituted the whole judgment, then the sentence might be regarded as "an order made after judgment." But it is also true that until the court acts upon the verdict and pronounces sentence upon the defendant there is no burden imposed about which to complain and take an appeal. Ac-

cordingly, it is commonly understood and accepted that the sentence is that which aggrieves him and is regarded either as the judgment or an essential part thereof. Consistent with this is the manner in which the term is used in Chapter 35 of Utah Code Ann. 1953, entitled "The Judgment."

Section 77–35–1 provides:

Time for pronouncing.—After a plea or verdict of guilty . . . the court must appoint a time for *pronouncing judgment* . . . [i. e., the sentence.]

Further in accord with the idea that the sentence is not "an order made after judgment" is the statement in our case of *State v. Fedder* : [1]

. . . *sentence is ordinarily synonymous with judgment,* and denotes the action of a court of criminal jurisdiction formally declaring to the accused the legal consequences of the guilt which he has confessed or of which he has been convicted. [All emphasis herein is added.]

We are not aware of, nor have we been shown, any adjudication to the effect that a sentence is such "an order made after judgment;" and it does not seem reasonable to suppose that the appeal allowed in the above-quoted statute was intended to be to the sentence imposed, or it could have plainly so stated.

The state makes the alternative argument: that if the quoted statute does not authorize the appeal, it should be allowed upon the ground set forth in the dissent in the case of *State v. Davenport,*[2] by myself and joined in by Chief Justice Ellett. Therein I set forth as persuasively as I could the proposition that the above-quoted statute is permissive only; and that in any event it could not supersede the general grant of the right of appeal under Section 9 of Article VIII of our Constitution. Wherefore, the state should have such right to correct errors or settle questions of law whenever it is deemed that the public inter-

est so requires. (Absent, of course, considerations of double jeopardy.) However, despite that effort to so persuade this court, it rejected that proposition and ruled to the contrary: that is, that the state has no right to appeal except as expressly provided in the above-quoted statute.[3] It is important to have in mind that that was the established law of this jurisdiction at all times material to this case, and when the sentence complained of was imposed; and when this appeal was filed.

 As a general proposition the law as established should remain so until changed by the legislature, whose prerogative it is to make and to change the law. This does not mean to say that where there is judge-made law, which is later observed to be clearly in error, that such error should be so cast in cement that it cannot be remedied. In such circumstances the court undoubtedly can and should correct it.

 But more important than any of the above is the oft proclaimed salutary principle: that ours is a government of laws and not of men. Accordingly, the law should not be changed simply because of the will or desire of judges as to what the law is or ought to be. Much less so, should it be so changed during the course of a particular proceeding to have a retroactive effect thereon. Notwithstanding the fact that the change the state advocates would vindicate, the position taken in the dissent referred to, to so rule in this case retroactively would violate what we regard as a higher principle: that of honoring the established law. If there is to be such a change in the law, whether by legislative act or by judicial decision, it seems that it should have only prospective effect and that fairness and good conscience require that it should not be applied retroactively to adversely affect rights as they existed at the time a particular controversy arose.[4]

1. 1 Utah 2d 117, 262 P.2d 753.

2. 30 Utah 2d 298, 517 P.2d 544.

3. Ibid. and cases cited therein, footnote 1.

4. That such a change is sometimes made and given only prospective effect, see *Great Northern Ry. Co. v. Sunburst Oil Co.,* 287 U.S. 358,

To be mentioned in passing is a question which has been spoken of as of some concern: does the imposition of a sentence for life, rather than the death penalty, adversely affect the substantial rights of the state. However, we do not think it is of controlling importance, but have assumed that it does, and have set that question aside, in order to deal with what we regard as more important problems.

There is a further proposition which we think has a legitimate bearing upon our action on this motion: due to the multifaced opinion of the United States Supreme Court in the case of *Furman v. Georgia,*[5] and subsequent adjudications,[6] there has developed a great deal of consternation and confusion about the death penalty. Other cases are pending before the courts and it is not clear what useful purpose could be served by adding another until the law is more clearly defined and settled in that area. Moreover, it appears that these defendants were involved in a series of killings which could hardly have been more fiendish or diabolical. Without making any suggestion with respect thereto, it is pointed out that it is up to the officials charged with that responsibility as to further prosecutions against the defendants, if and when they think a useful purpose would be served thereby.

It should be noted that this discussion deals solely with the motion to dismiss the state's appeal; and that it does not reach nor have any relationship whatsoever to the lawfulness of the defendants' conviction, which has been heretofore dealt with,[7] nor with the question of the death penalty.

On the basis of the record presented on this motion and what has been said herein, we have concluded to grant the motion to dismiss the appeal.

MAUGHAN, WILKINS and HALL, JJ., concur.

ELLETT, Chief Justice, (dissenting).

The opinions of the author in the main opinion regarding appeals by the state, unlike swiss cheese, do not improve with age. His dissent in the case of *State v. Davenport*[1] set forth the law correctly and he should have remained faithful to the correct principles set forth therein and should not have changed his vote simply because this Court heretofore made an error.

There should be a better reason for following an erroneous holding than the idea that once we make an error, it must be perpetuated until the legislature spends its time to correct our mistakes. We should correct our own errors as soon as the occasion arises when we are convinced that an error has been made. I would allow the appeal to stand.

Even if the appeal were not permitted by the constitution,[2] the judgment of the district court cannot be allowed to stand. On January 18, 1977, this Court remanded this case to the district court "for further proceedings in accordance with the law."[3] I dissented to the language used in the order of remand and thought we should tell the trial judge what the law was. His Honor, the district judge, was told to proceed in accordance with law. This he failed to do, and we should remand to have him comply with our order.

His failure to act in accordance with the law stems from the fact that the sentence to be imposed upon those guilty of murder

53 S.Ct. 145, 77 L.Ed. 360, cited in our case of *Rubalcava v. Gisseman,* 14 Utah 2d 344, 384 P.2d 389.

5. 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346.

6. *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859; *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913; *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929.

7. Conviction affirmed, 23 Utah 2d 231, 461 P.2d 297.

1. 30 Utah 2d 298, 517 P.2d 544 (1973).

2. Article VIII, Sec. 9 provides: "From all final judgments of the district courts, there shall be a right of appeal to the Supreme Court. . . ."

3. Utah, 559 P.2d 543 (1977).

and the first degree was death unless the jury trying the case made a recommendation of leniency which was not done in this case. Here, the defendants committed a series of murders, and after the decision in *Furman v. Georgia*[4] was handed down, they appeared on national television and gleefully admitted the killings, stating that they would kill more if and when they got out of prison.

The defendants had been sentenced to be shot, but the execution date was postponed by the United States Supreme Court. The case was remanded by that Court to the Utah Supreme Court to consider the case in the light of *Stewart v. Massachusetts*.[5] Instead of doing that, the majority of this Court simply remanded the matter to the district court.

Since Utah has never had a racial problem (only one black man has been executed in Utah since statehood in 1896), it cannot be said that we are governed by the *Stewart* or the *Furman* cases. Therefore, the only lawful penalty to be made is that of death. The trial court should have fixed a new date for the execution if it proceeded according to law as it was directed to do. However, the court did not proceed according to law; it imposed a sentence which cannot be found in the statutes, to wit: life imprisonment.

To follow the main opinion in this case is to let two cold-blooded murderers avoid the lawful sentence that they were originally given. If the state is not permitted to appeal the erroneous sentence imposed, the matter ends here until the defendants seek relief by way of habeas corpus on the ground that there is no penalty under the law for retaining them in prison. It would be better to allow the appeal and have a decision on the matter in the light of the *Stewart* case as the Supreme Court of the United States requested, than to merely remand for the court to follow the law.

It appears to me that this Court is supinely shirking its responsibility if we let the sentence stand as made. It is no excuse to refuse to stand firm on the principles of this case by saying that the prosecuting attorney can bring more cases of first degree murder against the defendants. We should do our duty, and if any court is to say that the penalty provided by law in this case is invalid and that these killers are to be freed, let it be some court other than our own.

---

4. 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

5. 408 U.S. 845, 92 S.Ct. 2845, 33 L.Ed.2d 744 (1972).