2009 UT 53

**STATE of Utah, Petitioner,**

v.

**Claudia LAYCOCK, Judge, Fourth Judicial District Court, Utah County, State of Utah, Respondent,**

**Trenton Jones, Real Party in Interest.**

No. 20070503.

Supreme Court of Utah.

Aug. 4, 2009.

Mark L. Shurtleff, Att'y Gen., Brett J. Delporto, Asst. Att'y Gen., Salt Lake City, Jason Sant, Provo, for petitioner.

Brent M. Johnson, Salt Lake City, for respondent Michael D. Esplin, Provo, for real party in interest.

On Certification from the Utah Court of Appeals

NEHRING, Justice:

## INTRODUCTION

¶ 1 In this case, we agreed to consider a petition for extraordinary writ filed by the State challenging a restitution ruling made by Judge Claudia Laycock in the Fourth District Court. Judge Laycock ordered

Trenton Jones to pay approximately $3000 in restitution but declined to order Mr. Jones to pay almost $600,000 for lost wages that had been sought by the State. The State argues that Judge Laycock's ruling was at odds with the provisions of Utah Code sections 77–38a–101 through –601, Utah's Crime Victims Restitution Act. We hold that Judge Laycock erred when she did not determine complete restitution as required by the Act, but her order for court-ordered restitution was lawful. We therefore grant the State's application for extraordinary relief for the limited purpose of instructing Judge Laycock to determine complete restitution.

## BACKGROUND

¶ 2 Mr. Jones was involved in an automobile accident with Larry Beach. We know little about the accident and rely on Judge Laycock's Findings of Fact, which were not challenged, to shed some light on the incident.

¶ 3 On an early February morning in 2004, Mr. Jones was driving east on state road 73 when he fell asleep. Mr. Jones's vehicle swerved into the westbound lane and struck Mr. Beach's vehicle head-on. Mr. Beach was pronounced dead at the scene of the accident. Mr. Jones was originally charged with automobile homicide, but he later pled guilty to negligent homicide as described in Utah Code section 76–5–206 (2008). Mr. Jones was sentenced in October 2004 to 365 days in jail, a fine, and community service. The court reserved the issue of restitution for a future date.

¶ 4 In April 2007, the district court ruled on restitution. Judge Claudia Laycock awarded $3355.68 in restitution for medical and funeral expenses and the cost of damage to Mr. Beach's car. Judge Laycock denied the State's restitution request that Mr. Jones be ordered to pay $572,769.60 for Mr. Beach's lost future wages.

¶ 5 Concurrently with the criminal proceedings, Corrine Beach, Mr. Beach's widow, filed a civil action against Mr. Jones for wrongful death. Mr. Jones and Mrs. Beach later settled the civil lawsuit. As part of the settlement, Mrs. Beach executed a Release of All Claims that released Mr. Jones from any past, present, or future claims.

¶ 6 The State challenges Judge Laycock's ruling, claiming that the judge abused her discretion. It filed a petition for extraordinary writ pursuant to rule 65B(d) of the Utah Rules of Civil Procedure and rule 19 of the Utah Rules of Appellate Procedure. "The State seeks an order directing Judge Laycock to hold an evidentiary hearing, determine complete restitution, and order defendant to pay restitution, including lost future wages, and otherwise comply with the requirements of State law." Prior to oral arguments, Mr. Jones, as the real party in interest, filed a suggestion of mootness based on Mrs. Beach's settlement of her civil suit. The court of appeals certified the appeal to us, and we have jurisdiction pursuant to Utah Code section 78A–3–102(3)(b).

## STANDARD OF REVIEW

¶ 7 By filing a petition for extraordinary writ pursuant to rule 65B(d) of the Utah Rules of Civil Procedure, the State recognizes that it "has no right to receive a remedy that corrects a lower court's mishandling of a particular case." *State v. Barrett,* 2005 UT 88, ¶ 23, 127 P.3d 682. Because the State has no right to appeal restitution judgments by a district court, it must file a petition under rule 65B. *See* Utah Code Ann. § 77–18a–1(3) (2008) (limiting the State's right of appeal to those instances expressly provided in that statute); *see also State v. Kelbach,* 569 P.2d 1100, 1102 (Utah 1977) ("[T]he state has no right to appeal except as expressly provided in the … statute."). Pursuant to rule 65B, a party with "no other plain, speedy and adequate remedy" available to it, may petition for extraordinary relief upon any of the grounds listed in that rule. Utah R. Civ. P. 65B(a). The State has based its petition upon subsection (d)(2), which states, "Appropriate relief may be granted: (A) where an inferior court, administrative agency, or officer exercising judicial functions has exceeded its jurisdiction or abused its discretion." *Id.* at 65B(d)(2). Specifically, the State has asked us to address whether Judge Laycock abused her discretion when she

made her restitution determination and ruling.

¶ 8 Relief under rule 65B(d)(2) is completely at the discretion of the reviewing court. In particular, the rule provides that "relief *may* be granted . . . where an inferior court . . . abused its discretion." *Id.* (emphasis added). In *Barrett*, we acknowledged the difficulty a party faces in obtaining such relief when we stated that "a party petitioning for rule 65B(d) extraordinary relief is not entitled to receive relief, even if that party successfully establishes that a lower court abused its discretion." 2005 UT 88, ¶ 23, 127 P.3d 682. In other words, a party may prove that a district court abused its discretion and still not be entitled to relief.

¶ 9 In *Barrett*, we clarified the considerations a court must take into account when reviewing a petition for extraordinary relief. We stated that a court will consider multiple factors, including the "egregiousness of the alleged error, the significance of the legal issue presented by the petition, the severity of the consequences occasioned by the alleged error," and any additional factors that may be regarded as important to the case's outcome. *Id.* ¶ 24.

¶ 10 Additionally, in the case of restitution, a reviewing court will not disturb a district court's determination unless the court exceeds the authority prescribed by law or abuses its discretion. *State v. Twitchell,* 832 P.2d 866, 868–69 (Utah Ct.App. 1992). With the appropriate standard of review set forth, we turn now to the merits of the case.

## DISCUSSION

¶ 11 We begin our analysis by taking up the issue of mootness raised by Mr. Jones. We will then turn to the State's petition for extraordinary relief in which it asked us to address three issues. These are the following: (1) Did the district court abuse its discretion in failing to properly determine complete and court-ordered restitution as required by law? (2) Did the district court abuse its discretion in assuming that comparative negligence principles would apply in determining restitution and that there

was evidence that the defendant was not solely at fault in the fatal accident? and (3) Did the district court abuse its discretion in declining to compensate the widow and children of Mr. Beach for their loss of the income he would have earned if he had not been killed in the accident? In asking us to address these issues, the State is seeking, as its ultimate judicial relief, that we order Judge Laycock to redetermine restitution and order Mr. Jones to pay $572,769.60 in restitution for Mr. Beach's lost wages. We begin first with the issue of mootness.

I. THIS CASE IS NOT MOOT BECAUSE THE CONTROVERSY BETWEEN THE PARTIES HAS NOT ENDED AND THE PURPOSES OF RESTITUTION HAVE NOT BEEN FULFILLED

¶ 12 Mr. Jones argues that the issue of restitution is moot because Mrs. Beach has settled her civil suit against Mr. Jones. "An appeal is moot if during the pendency of the appeal circumstances change so that the controversy is eliminated, thereby rendering the relief requested impossible or of no legal effect." *Baker v. Stevens,* 2005 UT 32, ¶ 9, 114 P.3d 580 (internal quotation marks omitted). The underlying issue that is raised by the suggestion of mootness is whether a civil settlement between a defendant and a victim, which includes a release of all claims by the victim, may bar a district court from imposing restitution in a criminal action involving the same incident. This is an issue of first impression.

¶ 13 Mr. Jones first argues that the controversy between the parties has ended and that the purposes of restitution have been fulfilled. As a result, Mr. Jones concludes that there are no claims of damages for the district court to adjudicate. We will address each of Mr. Jones's arguments in turn.

¶ 14 First, Mr. Jones argues that the controversy between himself and Mrs. Beach ended when Mrs. Beach signed the Release of All Claims. By signing the release, Mrs. Beach released Mr. Jones and his insurance company "from any and all past, present, or future claims and demands" relating to the

death of Mr. Beach. The release effectively extinguished all of Mrs. Beach's claims against Mr. Jones. Mr. Jones argues that because there are no further claims against him by Mrs. Beach, there is no further controversy between the parties.

¶ 15 Mr. Jones misapprehends the operation of the release in the context of Utah's restitution scheme. We agree that the release ended the controversy between Mr. Jones and Mrs. Beach. Mrs. Beach is, however, not a party to the petition before us. The parties involved in the case on appeal are the State of Utah and Mr. Jones. Thus, by resolving her claims against Mr. Jones, Mrs. Beach did not affect the criminal proceedings between the State and Mr. Jones. We agree with the Florida Supreme Court's statement on this matter.

> "While a settlement agreement with, and release of, a defendant's insurance company may reflect a victim's willingness to accept the amount paid in full satisfaction for all civil liability, it does not reflect the willingness of the People to accept that sum in satisfaction of the defendant's rehabilitative and deterrent debt to society. A restitution order pursuant to a defendant's plea is an agreement between the defendant and the state. The victim is not party to the agreement, and a release by the victim cannot act to release a defendant from his financial debt to the state any more than it could terminate his prison sentence."

*Kirby v. State,* 863 So.2d 238, 243 (Fla.2003) (quoting *People v. Bernal,* 101 Cal.App.4th 155, 123 Cal.Rptr.2d 622, 627 (2002)). It is a well-established principle in other jurisdictions that a civil settlement releasing a defendant from liability does not foreclose the state from seeking restitution in a criminal case. *See State v. Iniguez,* 169 Ariz. 533, 821 P.2d 194, 197 (Ct.App.1991) ("[T]he distinction between civil damages and restitution means that the victim's release of civil liability does not prevent the state from ordering the criminal law remedy of restitution." (emphasis omitted)); *People v. Maxich,* 971 P.2d 268, 270 (Colo.Ct.App.1998) ("[A] release from liability obtained in a civil settlement cannot limit a criminal court's authority to

order restitution equivalent to actual pecuniary damages."); *State v. Applegate,* 266 Kan. 1072, 976 P.2d 936, 938 (1999) (holding that because the state was not a party to a settlement agreement, "[a] civil release of claims does not and cannot specifically preclude court-ordered restitution in a criminal case"); *State v. Belfry,* 416 N.W.2d 811, 813 (Minn. Ct.App.1987) (holding that even though the victim has settled a civil claim and signed a release, "the state is not barred from seeking, or the court from imposing, reasonable restitution"); *Urias v. State,* 987 S.W.2d 613, 614 (Tex.App.1999) ("[T]he settlement on behalf of the injured party with the insurance company was not a bar to the trial court ordering restitution . . . .").

¶ 16 The controversy between the parties to the petition before us did not end with the settlement of the civil action. The State is a party only to the criminal case, which has not yet been fully resolved. Because the controversy between the parties to this petition has not yet ended, the case is not moot.

¶ 17 Mr. Jones also argues that the case is moot because the purpose for restitution has been fulfilled by the release. According to Mr. Jones, the purpose of restitution is to compensate the victim for all pecuniary damages caused by the defendant. For support of this proposition, he looks to section 77–38a–102(11), which states that " '[r]estitution' means full, partial, or nominal payment for pecuniary damages to a victim . . . ." Utah Code Ann. § 77–38a–102(11) (2008).

¶ 18 We note, however, that the fact that restitution may compensate a victim for his loss does not mean that, from the defendant's or the state's perspective, the only purpose for restitution is to pay a debt to the victim. Instead, as we noted above, restitution is mandated by statute and is a part of a criminal sanction imposed by the state. Thus, unlike an award of civil damages, which is the product of an orderly method of resolving a dispute between a victim and a defendant, an award of restitution has a two-fold purpose. One purpose is to compensate the victim for pecuniary damages. The other purpose, as a part of a criminal sanction, is to rehabilitate and deter the defendant, and others, from future illegal

behavior. *See Kirby*, 863 So.2d at 242.[1] We agree with the Florida Supreme Court's statement that "while the victim's wishes concerning restitution are relevant, they are not dispositive—it is the judge, not the victim, who must weigh society's competing needs." *Id.* at 243 (alteration omitted) (internal quotation marks omitted). The *Kirby* court elaborated on restitution's noncompensatory role by stating,

> "Restitution is an effective rehabilitative penalty because it forces the defendant to confront, in concrete terms, the harm his actions have caused. Such a penalty will affect the defendant differently than a traditional fine, paid to the State as an abstract and impersonal entity, and often calculated without regard to the harm the defendant has caused. Similarly, the direct relation between the harm and the punishment gives restitution a more precise deterrent effect than a traditional fine."

*Id.* (quoting *Bernal*, 123 Cal.Rptr.2d at 627). Thus, despite the civil settlement and release, if we were to grant the State's petition, Mr. Jones would still need to fulfill the rehabilitative and deterrent purposes of restitution. We therefore decline to grant Mr. Jones's suggestion of mootness because the controversy between the parties is not over and the dual purposes of restitution have not been fulfilled. We turn next to the issues raised by the State in its case against Judge Laycock.

## II. A COURT IS REQUIRED BY STATUTE TO CALCULATE COMPLETE RESTITUTION, BUT HAS DISCRETION WHETHER TO IMPOSE COURT–ORDERED RESTITUTION

■ ¶ 19 Having determined that this case is not moot, we turn to the issues raised by the State in its petition for extraordinary writ. We begin by exploring whether the district court abused its discretion when it failed to determine complete and court-ordered restitution as required by Utah Code section 77–38a–302. When examining a statute, we first look to its plain language. *Savage v. Utah Youth Vill.*, 2004 UT 102, ¶ 18, 104 P.3d 1242. Statutory language is presumed to reflect a legislative process that "use[s] each word advisedly and give[s] effect to each term according to its ordinary and accepted meaning." *State v. Low*, 2008 UT 58, ¶ 23, 192 P.3d 867 (internal quotation marks omitted). "We read the plain language of the statute as a whole[ ] and interpret its provisions in harmony with other statutes in the same chapter and related chapters." *Miller v. Weaver*, 2003 UT 12, ¶ 17, 66 P.3d 592. "We [also] follow the cardinal rule that the general purpose, intent or purport of the whole act shall control, and that all the parts be interpreted as subsidiary and harmonious to its manifest object." *Id.* (internal quotation marks omitted). We turn now to the statute at hand.

### A. The District Court Erred in Not Determining Complete Restitution

■ ¶ 20 Section 77–38a–302 establishes the criteria for determining restitution. The State argues that the district court abused its discretion by not determining complete restitution. Section 77–38a–302(2) creates two categories of restitution. This section states,

> In determining restitution, the court shall determine complete restitution and court-ordered restitution.
>
> (a) "Complete restitution" means restitution necessary to compensate a victim for all losses caused by the defendant.

---

1. We recognize that we have stated that "restitution is not a 'punishment' but a civil penalty whose purpose is entirely remedial." *Monson v. Carver*, 928 P.2d 1017, 1027 (Utah 1996). The restitution ordered in *Monson* is distinguishable from the case before us. In *Monson*, the Board of Pardons and Parole ordered the defendant to pay restitution as an alternative to a maximum life term. *Id.* at 1026. Monson argued that this order violated double jeopardy. *Id.* We disagreed and held that when restitution is ordered by the Board, it is not punishment but a civil penalty with only the remedial purpose of compensating the victim. *Id.* at 1027. In this case, restitution was ordered by a judge as part of a criminal sentence. Furthermore, rehabilitation and deterrence are *not* inconsistent with the statement in *Monson* that restitution is entirely remedial.

(b) "Court-ordered restitution" means the restitution the court having criminal jurisdiction orders the defendant to pay as a part of the criminal sentence at the time of sentencing or within one year after sentencing.

Utah Code Ann. § 77–38a–302(2)(a)–(b) (2008). The State argues that the subsections require a district court to determine complete restitution. It contends that Judge Laycock did not comply with the statute when she made her restitution determination because she did not include Mr. Beach's lost wages in her restitution order. We find the plain language of this subsection to be a clear directive that district courts are to make two separate restitution determinations, one for complete restitution and a second for court-ordered restitution. In making these determinations, a district court looks to section 77–38a–302(5) for the factors it must consider. *Id.* § 77–38a–302(2)(c). In calculating complete restitution, subsection (5) states,

(a) For the purpose of determining restitution for an offense, the offense shall include any criminal conduct admitted by the defendant to the sentencing court or to which the defendant agrees to pay restitution. A victim of an offense that involves as an element a scheme, a conspiracy, or a pattern of criminal activity, includes any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

(b) In determining the monetary sum and other conditions for complete restitution, the court shall consider all relevant facts, including:

(i) the cost of the damage or loss if the offense resulted in damage to or loss or destruction of property of a victim of the offense;

(ii) the cost of necessary medical and related professional services and devices relating to physical or mental health care, including nonmedical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment;

(iii) the cost of necessary physical and occupational therapy and rehabilitation;

(iv) the income lost by the victim as a result of the offense if the offense resulted in bodily injury to a victim;

(v) up to five days of the individual victim's determinable wages that are lost due to theft of or damage to tools or equipment items of a trade that were owned by the victim and were essential to the victim's current employment at the time of the offense; and

(vi) the cost of necessary funeral and related services if the offense resulted in the death of a victim.

*Id.* § 77–38a–302(5)(a)–(b). Court-ordered restitution may be awarded only if the court complies with the mandate of subsection 77–38a–302(5)(c) which states,

In determining the monetary sum and other conditions for court-ordered restitution, the court shall consider the factors listed in Subsections (5)(a) and (b) and:

(i) the financial resources of the defendant and the burden that payment of restitution will impose, with regard to the other obligations of the defendant;

(ii) the ability of the defendant to pay restitution on an installment basis or on other conditions to be fixed by the court;

(iii) the rehabilitative effect on the defendant of the payment of restitution and the method of payment; and

(iv) other circumstances which the court determines may make restitution inappropriate.

*Id.* § 77–38a–302(5)(c). Lost income is expressly enumerated as an element of complete restitution. For the purposes of this appeal it is critical to understand that while a court is required to determine complete restitution, and to consider the enumerated elements of loss, the statute does not require a court to order the defendant to pay complete restitution.

¶ 21 What the statute does not make clear, according to Judge Laycock, is the definition of restitution. Section 77–38a–102(11) defines restitution as the "full, partial, or nominal payment for pecuniary damages to a victim." *Id.* § 77–38a–102(11). This definition does not make the distinctions and definitional refinements, such as the dis-

tinction between complete and court-ordered restitution, made elsewhere in the statute. We do not read the two approaches to the definition of restitution to inject substantive ambiguity into Utah's restitution scheme. Indeed, when read as a whole, the statute unambiguously defines complete restitution as the full amount of pecuniary damages necessary to compensate a victim for losses caused by a defendant based on the factors listed in section 77–38a–302(5)(c).

¶ 22 We recognize, as did Judge Laycock in her brief, that the obligatory determination of complete restitution be reached without the aid of facts sufficient to lawfully allocate fault or support a damages award in a civil action. Indeed, in this case, the facts relating to the collision that took the life of Mr. Beach are scant, sufficient to support Mr. Jones's guilty plea, but otherwise unilluminating. Judge Laycock contends that making a complete restitution determination without a strong foundation of facts is inappropriate and is best left to a civil trial, which is a better setting to perform this task. She observes persuasively that the statute does not afford a defendant the discovery opportunities, nor does it assign burdens of proof in the same manner as a civil action. In particular, Judge Laycock states that in civil litigation, a defendant can raise issues of proximate cause and comparative negligence by using depositions and interrogatories to gather relevant information. A criminal restitution proceeding, on the other hand, does not provide these safeguards.

■■■ ¶ 23 Judge Laycock is correct when she points out the difficulty of ascertaining complete restitution based on incomplete facts and speculation. The statute commands, however, that complete restitu-

tion be determined. The statute even requires a judge who has not received sufficient damages information from a victim or prosecutor to nevertheless make a complete restitution determination "based on the best information available." *Id.* § 77–38a–203(1)(c). Where facts do not provide a full evidentiary foundation, the court must base its determination on the best information available. Although the court must determine complete restitution, it is not required to order a defendant to pay complete restitution as part of the criminal sentence. *Id.* § 77–38a–301 ("In a criminal action, the court *may* require a convicted defendant to make restitution." (emphasis added)).[2] A court's "determination" of restitution is different from ordering a defendant to pay restitution. After determining complete restitution, a district court judge may then order court-ordered restitution as part of the criminal sentence based on facts that would meet the same strict requirements as found in a civil setting.[3]

¶ 24 Here, Judge Laycock failed to make a determination of complete restitution. This was error. She was clearly required to determine complete restitution, as set out in Utah Code section 78–38a–302(2).

### B. Issues of Comparative Negligence May Apply to Determinations of Restitution

■■■ ¶ 25 The State next argues that Judge Laycock erred by assuming that comparative negligence principles might apply in this case. The State contends that the district court should have found as a matter of law that no allocation of fault should be assigned to Mr. Beach. When Mr. Jones

---

**2.** We note that ambiguity infects the restitution statute's grant of discretion to trial courts. Section 77–38a–301 states that "the court *may* require a convicted defendant to make restitution" while section 77–38a–302(1) states that "the court *shall* order that the defendant make restitution to victims." (Emphases added.) Additionally, section 77–38a–302(3) states, "If the court determines that restitution is appropriate or inappropriate under this part, the court shall make the reasons for the decision part of the court record." This provision unambiguously cedes to trial courts the discretion to either

award or to decline to make an award so long as the court explains its reasoning on the record.

**3.** We recognize that there is an additional safety mechanism in place to protect defendants when complete restitution based on supposition or incomplete facts is made. Section 77–38a–403 prevents evidence of an order or payment of restitution from being used as evidence in a civil proceeding. We would extend this to determinations of complete restitution, especially in cases where the evidentiary basis for such a determination would not stand up in a civil trial.

pled guilty to negligent homicide, he did not admit that Mr. Beach was not negligent.

¶ 26 As noted above, the established facts in this case are very limited. With such a limited foundation of facts, it would be difficult for a court to assume anything. The State would have us sit as a finder of fact and hold that Mr. Beach was not negligent. We decline to do this. Judge Laycock did not assume that Mr. Beach was at fault; rather, she determined that given the scant facts known about the collision that appeared in the record, she could assume that a fact-finder in a civil action could assign a measure of fault to Mr. Beach. This was not error.

▮▮▮▮ ¶ 27 With such a limited factual basis, it would be difficult for a judge to make decisions about court-ordered restitution based on assumptions. The better course of action, as Judge Laycock decided, was to allow the facts to be established in a civil litigation setting. Such a determination was properly within her discretion. We therefore hold that issues of comparative negligence may be relevant in determining restitution, and Judge Laycock was right to recognize the limited factual basis and to therefore refuse to impose court-ordered restitution based on it.[4]

*C. The Victim Was Not Entitled to an Award of Restitution Compensating Her for the Loss of Her Deceased Husband's Future Earnings*

▮▮▮ ¶ 28 As we discussed above, Judge Laycock abused her discretion when she did not determine complete restitution. Judge Laycock, however, was under no obligation to impose court-ordered restitution in an amount equal to complete restitution. Utah Code Ann. § 77–38a–301. Because the imposition of court-ordered restitution is discretionary, Judge Laycock properly exercised her discretion when she made her determination of court-ordered restitution. In making her court-ordered restitution determination, Judge Laycock followed the statutory criteria

of explaining her reasoning for not including lost wages. *See id.* § 77–38a–302(3) ("If the court determines that restitution is appropriate or inappropriate under this part, the court shall make the reasons for the decision part of the court record."). Her conclusion that the facts were too limited to justify court-ordered restitution for an array of damages including lost wages was well within her discretion.

¶ 29 We find this reasoning persuasive and within Judge Laycock's discretion. In analyzing the imposition of restitution, the court of appeals stated, "Matters of negligence, proximate cause and the amount of resulting damages are best left to civil litigation. Restitution should be ordered only in cases where liability is clear as a matter of law and where commission of the crime clearly establishes causality of the injury or damages." *State v. Robinson,* 860 P.2d 979, 983 (Utah Ct.App.1993). As Judge Laycock noted, there are procedural safeguards available to a litigant in a civil setting that are unavailable in a criminal restitution proceeding. When the facts of a case are limited or unclear, the civil setting is the best place for them to be determined.

▮▮▮ ¶ 30 The State takes issue with an interpretation of the restitution scheme that does not require Judge Laycock to order Mr. Jones to pay complete restitution. Were we to adopt the State's interpretation, we would read "court-ordered restitution" out of the statute. Court-ordered restitution may be identical in amount to complete restitution, but it need not be so. Unlike complete restitution, court-ordered restitution may be adjusted to take the defendant's ability to pay into account. Utah Code Ann. § 77–38a–302(5)(c). The clear distinction between complete and court-ordered restitution is complicated, however, by section 77–38a–401. Section 77–38a–401(1) mandates a court to enter a civil judgment for the amount of complete restitution upon a determination that a defendant owes restitution. This stat-

---

4. We further note that section 78–38a–302(2)(a) defines complete restitution as that "necessary to compensate a victim for all losses *caused* by the defendant." (Emphasis added.) A trial judge cannot decline to consider evidence that a vic- tim's losses were caused, not by a defendant, but by the victim's own negligence, or indeed the negligence of some other person in its determination of *complete restitution.*

utory provision clashes with the complete restitution/court-ordered restitution scheme and casts doubt over the viability of court-ordered restitution.

¶ 31 The internal contradictions within the restitution scheme are not ripe for our review in this appeal. It is appropriate for us to discuss several of them—even if we do not decide them—because they will bear directly on the future proceedings in this case. We have held in this appeal that Mrs. Beach's release of Mr. Jones from all civil claims did not moot Mrs. Beach's claims to restitution, nor did it excuse Judge Laycock from her statutory obligation to determine complete restitution. Our reasoning borrows from the Florida Supreme Court, which stated,

> While a settlement agreement with, and release of, a defendant's insurance company may reflect a victim's willingness to accept the amount in full satisfaction for all civil liability, it does not reflect the willingness of the People to accept that sum in satisfaction of the defendant's rehabilitative and deterrent debt to society.

*Kirby v. State,* 863 So.2d 238, 243 (Fla.2003) (internal quotation marks omitted).

¶ 32 Utah Code section 77–38a–401(2) requires courts to reduce all determinations of complete restitution to civil judgments "enforceable under the Utah Rules of Civil Procedure." Presumably, a court may use its contempt power as well as other coercive measures to compel a defendant to pay court-ordered restitution. Section 77–38a–401 restricts the authority of a court or crime victim to the remedies available to a judgment creditor. The apparent trade-off made by the legislature in enacting the restitution scheme was to, on the one hand, expand the authority of the courts to see to it that defendants pay court-ordered restitution, as evidenced by sections 77–38a–501 and 77–38a–502, while permitting courts to fix court-ordered restitution at an amount less than complete restitution by taking into account the financial resources of the defendant and the burden that payment of restitution will impose with regard to the other obligations of the defendant, as evidenced by section 77–38a–302(5)(c)(i).

¶ 33 In the context of this case, once Judge Laycock completes the task assigned to her on remand—to determine complete restitution—that sum will be reduced to a civil judgment, a judgment that may only be enforced through the Utah Rules of Civil Procedure. At that point, a serious question will arise over whether Mrs. Beach may execute on her judgment when she has released Mr. Jones from all of her claims against him. While this question is one we need not answer today, we likely will be required to answer it someday. It would appear that under our statutory scheme, the rationale we used to reject Mr. Jones' mootness claim may lose much of its persuasive force after a civil judgment is entered.

¶ 34 Because Judge Laycock provided adequate reasoning for her court-ordered restitution determination, we do not find that she abused her discretion. As such, we will not disturb her order.

## CONCLUSION

¶ 35 In conclusion, we grant the State's petition to the extent that Judge Laycock failed to determine complete restitution and therefore remand for the sole purpose of ascertaining complete restitution. We do not, however, disturb Judge Laycock's ruling requiring Mr. Jones to pay court-ordered restitution in the amount of $3355.68.

¶ 36 Associate Chief Justice DURRANT, Justice WILKINS, and Justice PARRISH concur in Justice NEHRING's opinion.

DURHAM, Chief Justice, concurring:

¶ 37 I write separately to note a degree of uneasiness with the statute's treatment of lost income. The statute provides for lost income if the offense results in "bodily injury," and funeral expenses if the offense results "in death." Utah Code Ann. § 77–38a–302(5)(b) (2008). The majority opinion assumes that the legislature intended death to be subsumed in the "bodily injury" category, and that assumption is probably correct. If it is not, however, I hope the point will be clarified by the legislature.