2019 UT App 120

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
DEE ALLEN RANDALL,
Appellant.

Opinion
No. 20170836-CA
Filed July 11, 2019

Third District Court, Salt Lake Department
The Honorable Mark S. Kouris
No. 141906717

Nathalie S. Skibine and Wojciech S. Nitecki,
Attorneys for Appellant

Sean D. Reyes and Nathan D. Anderson, Attorneys
for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and KATE APPLEBY
concurred.

MORTENSEN, Judge:

¶1     For many years Dee Allen Randall cheated investors out
of millions of dollars in a classic Ponzi scheme.[1] Financial

---

1. A Ponzi scheme is a "fraudulent investment scheme in which
money contributed by later investors generates artificially high
dividends or returns for the original investors, whose example
attracts even larger investments." *Ponzi Scheme*, Black's Law
Dictionary (11th ed. 2019). "Money from the new investors is
used directly to repay or pay interest to earlier investors,
(continued…)

carnage for Randall's victims followed. The ill-gotten money is gone. On balance, the victims and their families will suffer from the burden and effects of Randall's fraud forever. After Randall was charged with a number of crimes, he pled guilty to four counts of securities fraud and one count of engaging in a pattern of unlawful activity. He was sentenced to prison. Months later, the sentencing court held a hearing and determined that both complete and court-ordered restitution should be set at $10.2 million, although the record reflected that investors may have been fleeced out of over $36.8 million.[2] Randall appeals the restitution determination. We affirm.

BACKGROUND

*The Crime*

¶2      Over about a ten-year period, Randall ran a Ponzi scheme that defrauded more than 500 investors out of over $36.8 million. He sold investors private placement securities in one of his

_____

(…continued)
[usually] without any operation or revenue-producing activity other than the continual raising of new funds." *Id.*

2. "'Complete restitution' means restitution necessary to compensate a victim for all losses caused by the defendant," while "'[c]ourt-ordered restitution' means the restitution the court having criminal jurisdiction orders the defendant to pay as a part of the criminal sentence." Utah Code Ann. § 77-38a-302(2)(a)–(b) (LexisNexis 2017). "Court-ordered restitution is therefore a subset of complete restitution that, among other things, takes into account the defendant's circumstances." *State v. Hamilton*, 2018 UT App 202, ¶ 28, 437 P.3d 530 (cleaned up).

several companies (Horizon Entities).[3] These securities (Horizon Notes), on which Randall promised a return of nine to seventeen percent annually, were promissory notes issued by Horizon Entities.[4] But the companies composing Horizon Entities were failing; financial audits revealed that they had been operating at a loss for years and were not expected to survive another. To keep Horizon Entities afloat, Randall commingled funds among his companies and used new investor money to pay old investors. In fact, Randall admitted to running a "legal Ponzi scheme" during his bankruptcy proceedings. The director of the Utah Division of Securities described Randall's scheme as "probably one of the two or three most egregious cases of securities fraud that [he had] seen in the state." The State charged Randall with eighteen counts of securities fraud and one count of a pattern of unlawful activity.

*The Plea Agreement*

¶3     Just weeks before trial, Randall pled guilty to four counts of securities fraud and one count of engaging in a pattern of unlawful activity. The State dismissed the remaining counts. The victims of the securities fraud counts to which Randall pled

---

3. A private placement security is an "offering exempt from registration with the SEC . . . . Generally speaking, private placements are not subject to some of the laws and regulations that are designed to protect investors, such as the comprehensive disclosure requirements that apply to registered offerings." U.S. Sec. & Exch. Comm'n, *Investor Bulletin: Private Placements Under Regulation D* (Sept. 24, 2014), https://www.sec.gov/oiea/investor-alerts-bulletins/ib_privateplacements.html [https://perma.cc/VC9 W-MU48].

4. Horizon Entities consisted of companies involved in real estate development and issuing automobile loans to people with poor credit.

guilty—two individuals and two couples—were named in the plea agreement. The pattern of unlawful activity count to which Randall pled guilty did not identify specific victims but stated that "commencing on or about June 2009 and continuing through at least April 2011, [Randall] engaged in conduct which constituted the commission of at least three episodes of unlawful activity" involving securities fraud. Randall acknowledged that he "may be ordered to make restitution to any victim or victims of [his] crimes, including any restitution that may be owed on charges that are dismissed as part of a plea agreement." The plea agreement further specified,

> [Randall] agrees to an order of "complete" restitution *pertaining to all victims, whether named or unnamed*, in an amount to be determined by the Court. The defendant acknowledges that the State will seek restitution in the approximate amount of $36.8 million for investors listed in the attached spreadsheet[5] . . . . The State acknowledges that the defendant may dispute restitution for investors listed therein, and the parties agree that the Court shall determine whether the Pattern of Unlawful Activity statute, [Utah Code sections 76-10-1601 to -1609], permits restitution pertaining to all such investors. . . . [Randall's] "court-ordered" restitution shall be determined in accordance with [Utah Code section] 77-38a-302(2)(c).[6]

(Emphasis added.)

---

5. The attached spreadsheet identified more than 500 investors and their respective losses, totaling over $36.8 million.

6. This section of the code points to the factors a sentencing court is to consider in determining complete and court-ordered restitution.

¶4 At the plea hearing, Randall admitted that he "recklessly made . . . material omissions" in representing the investments he offered to the defrauded investors and that he "engaged in a pattern of activity which involved . . . paying . . . old investments with new invested money in at least three instances." Randall's counsel, however, noting that there was no agreement regarding restitution, asked for a post-sentencing hearing.

*Sentencing*

¶5 At the sentencing hearing, Randall asked the court to suspend any prison sentence and place him on probation so that he could "work to repay what . . . he took unlawfully." He submitted a repayment plan that contemplated the distribution of $1.4 million to defrauded investors over a period of fifteen years. Randall further stated, "Look, I'm guilty. . . . I did this. Investors lost money, because of my actions, my omissions." He admitted that he did not disclose to investors how poorly his businesses were doing, because "people would not have invested" had they known the truth. He further stated, "I am so deeply sorry for every single investor, *not only those who are sitting here, but others that are not*." (Emphasis added.) He added, "I am committed to work every day of my life. . . . I am determined to do whatever I can to see that they all get as much money as they can before the day I die." While admitting that he would be unlikely to "pay the entire restitution," Randall noted that he could "at least pay the restitution to begin with to the people who were named in the information." Nevertheless, Randall acknowledged that his responsibility to pay restitution "doesn't stop with just the investors who are listed in the information."

¶6 The State asked that Randall be sentenced to prison, stating,

> You don't defraud people out of $36.8 million and get probation. You don't destroy hundreds and

> hundreds of lives and get probation. . . .
> [H]undreds of people have to suffer emotional and
> physical pain, possibly early deaths, family
> conflict, loss of house, business, et cetera, but he
> gets to stay in his house and stay with his family?
> If that's how things work, something is wrong.

The court agreed with the State and sentenced Randall to three to fifteen years on the securities counts and one to fifteen years in prison on the pattern of unlawful activity count.

### Restitution

¶7    At the restitution hearing, the State asked for complete restitution in the amount of $36.8 million to repay all those Randall had defrauded. Randall disputed this amount. He first argued that the plea agreement limited his pattern of unlawful activity to the period between June 2009 and April 2011. Citing Utah Code section 77-38a-302(5)(a), Randall then argued that the State had not proved all the investors in that time period were "directly harmed" by Randall's criminal conduct "in the course of a scheme, conspiracy or pattern," thus greatly limiting the amount of complete restitution the court should impose. The sentencing court agreed with Randall on the first argument and limited the restitution he owed to the victims he had defrauded between June 2009 and April 2011.[7] But the court disagreed with Randall on the second argument, finding that the "victims were directly harmed" by Randall's criminal conduct. Accordingly, the court set complete restitution at $10.2 million.

¶8    Regarding court-ordered restitution, Randall argued that the amount should be set at $31,000—the amount held in Randall's trust account with the court. Randall argued that in

---

7. The court determined that Randall's conduct harmed 156 investors during this period.

light of his circumstances—namely, he had no financial resources, he was going to prison for at least nine years, he was sixty-seven years old and would be seventy-five when released—there was "no reason to impose additional court-ordered restitution in this case." The State, while agreeing that Randall lacked the financial resources to pay complete restitution, argued that court-ordered restitution should be set at $10.2 million, given the "overwhelming amount of loss" and the "enormous fraud" visited upon the victims.

¶9     The sentencing court responded by stating that it had considered the restitution factors listed in Utah Code section 77-38a-302(5)(a)–(b) and determined that "these victims listed here were directly harmed . . . by [Randall's] actions, and there's an absolute nexus there." The court noted that Randall had taken the life savings of many of his victims and left them with nothing. In applying section 77-38a-302(5)(c), the court acknowledged that, given the lack of financial resources, court-ordered restitution imposed a burden on Randall. Although it found his inability to pay "problematic," the court weighed this burden against "the fact that [Randall] took [money] from other people." After "seriously looking at all of those factors," the court set court-ordered restitution at $10.2 million, the same as complete restitution. Randall appeals.

ISSUES AND STANDARDS OF REVIEW

¶10    Randall first asserts that the sentencing court erred when it set the amount of complete restitution at $10.2 million based on the combined net losses of the 156 people who invested with Randall from June 2009 until April 2011. Second, Randall claims that the sentencing court erred, after it considered but rejected Randall's arguments, in calculating court-ordered restitution as the same amount as complete restitution.

¶11    "[I]n the case of restitution, a reviewing court will not disturb a [sentencing] court's determination unless the court

exceeds the authority prescribed by law or abuses its discretion." *State v. Laycock*, 2009 UT 53, ¶ 10, 214 P.3d 104. "A court will be deemed to have abused its discretion only if no reasonable person would take the view adopted by the [sentencing] court." *State v. England*, 2017 UT App 170, ¶ 9, 405 P.3d 848 (cleaned up).

ANALYSIS

## I. Complete Restitution

### A.     Scope of Complete Restitution

¶12     Randall argues on appeal that the sentencing court erred when it considered the losses suffered by 156 investors and set complete restitution at $10.2 million. Randall contends that at most the charges to which he pled guilty encompassed twelve victims and resulted in about $1.2 million in losses. Thus, this issue requires us to determine whether the sentencing court correctly included 156 investors as Randall's victims. We conclude that it did.

¶13     "When a person is convicted of criminal activity that has resulted in pecuniary damages, . . . the court shall order that the defendant make restitution to the victims, or for conduct for which the defendant has agreed to make restitution as part of a plea agreement." Utah Code Ann. § 76-3-201(4)(a) (LexisNexis 2017).[8] The Crime Victims Restitution Act (Restitution Act), *see generally id.* §§ 77-38a-101 to -601, defines a victim as "any person . . . *who the court determines has suffered pecuniary damages* as a result of the defendant's criminal activities," *id.* § 77-38a-102(14)(a) (emphasis added). Furthermore, "[a] victim of an offense that involves as an element a scheme, a conspiracy, or a

---

8. Because the statutory provisions in effect at the relevant time do not differ in any material way from the provisions now in effect, we cite the current version of the Utah Code.

pattern of criminal activity, includes *any person directly harmed* by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." *Id.* § 77-38a-302(5)(a) (emphasis added). "According to the plain language of the statute, restitution can include payment for crimes not listed in the information so long as a defendant admits responsibility or agrees to pay restitution." *State v. Bickley*, 2002 UT App 342, ¶ 9, 60 P.3d 582. But "a defendant cannot be ordered to pay restitution for criminal activities for which the defendant did not admit responsibility, was not convicted, or did not agree to pay restitution." *Id.*

¶14  Here, Randall claims that he did not agree to pay restitution to all 156 investors. But the plain language of his plea agreement leads us to arrive at a contrary conclusion. The plea agreement stated that Randall "agrees to an order of 'complete' restitution pertaining to all victims, whether named or unnamed, in an amount to be determined by the [sentencing court]." Furthermore, the plea agreement stated that Randall and the State "agree that the [sentencing court] shall determine whether the Pattern of Unlawful Activity statute, [Utah Code sections 76-10-1601 to -1609], permits restitution pertaining to all such investors." And the court made such a determination in Randall's case. Before the sentencing court, the State argued that the words "all victims" in Randall's plea agreement required him to pay restitution in the amount of $36.8 million to the more than 500 investors he defrauded. Randall disputed this claim and argued that the pool of investors should be more limited. The court agreed with Randall and limited the victim pool to those defrauded between June 2009 and April 2011, namely 156 investors.

¶15  Randall also argues that the pool of defrauded investors encompassed by the plea agreement should be further limited to the twelve victims he admitted harming, resulting in complete restitution of $1.1 million. But Randall ignores some key parts of the record establishing that he admitted to defrauding more than

the twelve named victims. At the sentencing hearing he stated, "I am so deeply sorry for every single investor, *not only those who are sitting here, but others that are not*." (Emphasis added.) Randall admitted his responsibility to pay restitution "doesn't stop with just the *investors who are listed* in the information." (Emphasis added.) And while acknowledging he would be unlikely to repay all those he defrauded, Randall offered that he could "at least pay the restitution *to begin with to the people who were named* in the information." (Emphasis added.) Finally, Randall stated, "I am determined to do whatever I can to see that they [i.e., the investors] all get as much money as they can before the day I die." To this end, he presented a $1.4 million repayment plan. If Randall were admitting that he had defrauded twelve investors of only $1.1 million, we are at loss as to why he would present a repayment plan in excess of that amount that would only "begin" to repay investors. The obvious reason is that Randall himself acknowledged that his fraud extended beyond the twelve named individuals.

¶16   Even if Randall did not explicitly admit that he defrauded more than twelve victims, the sentencing court still retained discretion to order restitution for the 156 victims who were defrauded by Randall's pattern of unlawful activity covered by the plea agreement. In *State v. Hight*, 2008 UT App 118, 182 P.3d 922, a defendant pled guilty to the "broad offense" of burglary and stealing marijuana. *Id.* ¶ 4. Although he never admitted to stealing a watch, a set of keys, and a silver dollar collection, which were missing from the burglarized premises, the trial court ordered that the defendant pay restitution for those items. *Id.* The defendant claimed that the trial court erred in ordering restitution for the missing items because "his responsibility for any particular missing items must be firmly established before the court [could] order restitution for them." *Id.* (cleaned up). We affirmed the trial court: "Once [the defendant pled] guilty to burglary, the trial court acted within its broad discretion, after reviewing the evidence presented at the restitution hearing, in

ordering restitution for any pecuniary damages clearly resulting from the burglary." *Id.* ¶ 5.

¶17 Here, Randall pled guilty to "engag[ing] in conduct which constituted the commission of at least three episodes of unlawful activity as defined in [the Pattern of Unlawful Activity Act]." And Randall agreed to allow the sentencing court to determine the amount of restitution owed to all investors, "whether named or unnamed," harmed by his pattern of unlawful activity. As in *Hight*, Randall pled guilty to the broad offense of engaging in a pattern of unlawful activity between June 2009 and April 2011 through which he defrauded named and unnamed investors. Once Randall pled guilty to a pattern of unlawful activity during the period in question, the sentencing court "acted within its broad discretion . . . in ordering restitution for any pecuniary damages" suffered by the 156 victims Randall defrauded during that time. *See id.*

¶18 We conclude that the sentencing court correctly determined that the plea agreement Randall signed included his admission that he defrauded 156 investors of $10.2 million between June 2009 and April 2011.

B.     Causation

¶19 Randall also argues that the State failed to establish that Randall's crimes caused the losses suffered by the investors. We find this argument unpersuasive.

¶20 "Proximate cause is required to find that a criminal activity has resulted in pecuniary damages." *State v. Ogden*, 2018 UT 8, ¶ 48, 416 P.3d 1132 (cleaned up). "Proximate cause has two elements. First, but-for causation must be present; indeed, proximate cause is that cause which, in a natural and continuous sequence, unbroken by any new cause, produced the injury, and without which the injury would not have occurred. Second, the harm must be foreseeable." *State v. Oliver*, 2018 UT App 101, ¶ 21, 427 P.3d 495 (cleaned up).

¶21   The record indicates that Randall's actions proximately caused pecuniary damage to the investors. Randall sold investors private placement securities in his companies. He induced victims to hand over their money by promising annual returns of nine to seventeen percent. All the while, Randall knew his companies were failing and had been for years. Randall engaged in the reckless practice of keeping his companies afloat by commingling funds among them and using new investor money to pay old investors—a classic Ponzi scheme. Indeed, Randall's lies caused people who trusted him to transfer their life savings into his care. As Randall's counsel admitted, had these trusting souls known the truth, they "would not have invested." Thus, by failing to disclose essential information to investors, Randall's conduct was a "substantial causative factor" leading to the losses they incurred. *See McCorvey v. Utah State Dep't of Transp.*, 868 P.2d 41, 45 (Utah 1993). Furthermore, given Randall's knowledge of the precarious financial health of his companies, the potential for harm to investors was entirely foreseeable, if not inevitable.

¶22   Thus, we conclude that the sentencing court properly determined that Randall's conduct proximately caused the losses of the 156 investors.

## II. Court-Ordered Restitution

¶23   Randall argues that the sentencing court erred in calculating court-ordered restitution identical in amount to complete restitution. Court-ordered restitution is the "restitution the court having criminal jurisdiction orders the defendant to pay as a part of the criminal sentence." Utah Code Ann. § 77-38a-302(2)(b) (LexisNexis 2017). The amount of court-ordered restitution is determined by the court after it has calculated complete restitution under the Restitution Act. The factors for court-ordered restitution include (1) the factors for complete restitution, including the loss to the victim, (2) "the financial resources of the defendant," (3) "the burden that payment of

restitution will impose, with regard to the other obligations of the defendant," (4) "the ability of the defendant to pay restitution on an installment basis," (5) "the rehabilitative effect on the defendant," and (6) "other circumstances that the court determines may make restitution inappropriate." *Id.* § 77-38a-302(5)(b)–(c); *see also State v. Thomas*, 2016 UT App 79, ¶ 4, 372 P.3d 87 (per curiam). "Court-ordered restitution may be identical in amount to complete restitution, but it need not be so." *State v. Laycock*, 2009 UT 53, ¶ 30, 214 P.3d 104. "Additionally, in the case of restitution, a reviewing court will not disturb a [sentencing] court's determination unless the court exceeds the authority prescribed by law or abuses its discretion." *Id.* ¶ 10. Finally, "a restitution order will be overturned for abuse of discretion only if no reasonable person would take the view adopted by the [sentencing] court." *Thomas*, 2016 UT App 79, ¶ 4 (cleaned up).

¶24 The analysis on this issue requires us to determine whether the sentencing court adequately considered the factors for complete and court-ordered restitution. *See* Utah Code Ann. § 77-38a-302(5)(a)–(c). The record indicates that it did. Making explicit reference to Utah Code section 77-38a-302(5)(a)–(b), the court determined that Randall directly harmed the victims when he took their life savings and left them with nothing. The court described one defrauded couple in poignant terms: "[T]hey are both sick now and they both now somehow have to go back out and get work, and they are in their 60s and they aren't healthy, and they had no idea where to turn." Referencing Utah Code section 77-38a-302(5)(c), the sentencing court then considered Randall's financial resources, acknowledging that restitution imposed a heavy burden on Randall. It noted that Randall was old, going to prison, and may never get out. Although the court found Randall's circumstances "problematic," it weighed the burden that restitution imposed on him against the harm inflicted on his victims. After "seriously looking at all of those factors," the court set court-ordered restitution at $10.2 million.

¶25   Randall "essentially argues that because the court-ordered restitution amount was not lower than the complete restitution amount, the [sentencing] court must have failed to consider the required factors and, therefore, it abused its discretion." *See Thomas*, 2016 UT App 79, ¶ 5. But the record shows that the sentencing court considered all required factors and found that they weighed in favor of substantial court-ordered restitution. The Restitution Act requires only that the sentencing court "consider" the financial resources of a defendant in imposing restitution. *See* Utah Code Ann. § 77-38a-302(5)(c). This statute in no way requires that Randall's crime-induced, self-inflicted financial straits be given dispositive effect in determining court-ordered restitution. The fact that Randall will most likely never pay the $10.2 million court-ordered restitution "does not, standing alone, demonstrate that the [sentencing] court failed to consider the statutorily required factors." *See Thomas*, 2016 UT App 79, ¶ 6. As our supreme court has pointed out, restitution has a two-fold purpose. "One purpose is to compensate the victim for pecuniary damages. The other purpose, as a part of a criminal sanction, is to rehabilitate and deter the defendant, and others, from future illegal behavior." *Laycock*, 2009 UT 53, ¶ 18. Rehabilitation refers to the "process of seeking to improve a criminal's character and outlook so that he or she can function in society without committing other crimes." *Rehabilitation*, Black's Law Dictionary (11th ed. 2019). Thus, "restitution is an effective rehabilitative penalty because it forces the defendant to confront, in concrete terms, the harm his actions have caused. . . . The direct relation between the harm and the punishment gives restitution a more precise deterrent effect than a traditional fine." *Laycock*, 2009 UT 53, ¶ 18 (cleaned up). From this perspective, the imposition of $10.2 million in restitution will arguably have the most impact on Randall and others. This restitution order will make Randall and other potential fraudsters more sensitive to greed's cost and the real harm caused. Finally, if there is any remote possibility that Randall can pay anything, his victims should remain first in line to claim any funds to which Randall may have access, even

to the end of his days. This approach acknowledges how devastating financial crimes like these are to the lives of so many.

¶26   We conclude that the sentencing court properly considered the statutory factors and did not abuse its discretion in imposing $10.2 million in court-ordered restitution.

CONCLUSION

¶27   The sentencing court correctly determined that Randall admitted in his plea agreement to defrauding 156 investors of $10.2 million between June 2009 and April 2011. Randall's fraud caused the losses suffered by these 156 investors, and the sentencing court did not abuse its discretion in setting court-ordered restitution at $10.2 million.

¶28   Affirmed.

_____