**2019 UT App 77**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
ALLAN BRUUN,
Appellant.

Opinion
No. 20160466-CA
Filed May 9, 2019

Third District Court, Salt Lake Department
The Honorable Katie Bernards-Goodman
No. 111903468

Clifton W. Thompson, Attorney for Appellant

Sean D. Reyes, Jeffrey S. Gray, and Jacob S. Taylor,
Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES KATE APPLEBY and JILL M. POHLMAN concurred.

ORME, Judge:

¶1     This case presents the question of whether a civil settlement between a victim and a defendant, entered into prior to entry of an order of complete restitution in a related criminal case, precludes the victim from enforcing that restitution order once it is entered as a judgment on the civil docket. In light of the plain language of, and the well-recognized purposes for, the Crime Victims Restitution Act, we conclude that a prior civil settlement does not preclude enforcement of a restitution judgment provided that the victim does not obtain a double recovery.

## BACKGROUND[1]

¶2 Following a jury trial in 2013, Allan Bruun and James Diderickson (collectively, Defendants) were convicted of twelve counts of theft and one count of engaging in a pattern of unlawful activity, growing out of their criminal conduct perpetrated against Utah County landowners (Victims).[2] In 2007, Defendants and Victims entered into a joint business venture to develop 29 acres of land in Saratoga Springs (the Property) that Victims had purchased decades earlier to fund their retirement. Victims partnered with an entity owned by Defendants, Equity Partners LLC, to form Tivoli Properties LLC, whose purpose was to "carry[] on the business of acquiring, managing, improving, subdividing, developing, leasing and selling the Property or any other enterprise that members may mutually agree upon." Victims held a 25% interest in Tivoli, and Equity Partners owned the remainder.

¶3 As part of the joint venture, Victims also agreed to sell the Property to Equity Partners for $3.5 million, with $750,000 due as a down payment. Prior to closing on the sale of the Property, Defendants informed Victims that they were unable to make the $750,000 down payment and convinced Victims to take out a loan secured by the Property for that amount to enable commencement of the Property's development. Approximately $350,000 of the loan proceeds was used to pay off existing mortgages and taxes on the Property, and the remaining

---

1. "On appeal, we recite the facts from the record in the light most favorable to the jury's verdict and present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Daniels*, 2002 UT 2, ¶ 2, 40 P.3d 611.

2. A more detailed account of the facts underlying Defendants' convictions is provided in our prior decision in this case. *See State v. Bruun*, 2017 UT App 182, ¶¶ 2–13, 405 P.3d 905.

$400,000 was transferred to Tivoli's business checking account, whereupon that sum became the company's only operating funds.

¶4    Approximately six months later, Victims discovered that Defendants had written a host of checks on Tivoli's account that did not appear to be related to the development of the Property. Following Victims' complaints and ensuing negotiations, Victims and Defendants entered into a settlement agreement (the Settlement Agreement) in which Defendants agreed to transfer title to all but .6 acres of the Property back to Victims. Defendants had already sold the remaining .6 acres to the Utah Department of Transportation, but they agreed to also transfer the proceeds from that sale, $174,000, to Victims. In exchange, Victims paid Equity Partners $25,000 and agreed to "waive any claim or right to assert any cause of action" against Defendants related to their management of Tivoli. The checks that later gave rise to the theft charges against Defendants were identified in the Settlement Agreement, which recited that Victims released any claims they had concerning the checks.

¶5    Two years later, the State charged Defendants with 28 counts of theft and one count of engaging in a pattern of unlawful activity for writing unauthorized checks on Tivoli's account. A jury determined that 12 of the 28 checks were unauthorized by Tivoli's operating agreement and convicted Defendants on twelve counts of theft and one count of engaging in a pattern of unlawful activity. As part of their sentence, the district court ordered Defendants to jointly and severally pay Victims $189,574.33 in complete and court-ordered restitution— the aggregate sum of the 12 checks underlying the theft convictions.

¶6    Defendants previously appealed their convictions and the district court's order of restitution, resulting in our decision in *State v. Bruun* (*Bruun I*), 2017 UT App 182, 405 P.3d 905. In challenging the restitution order, Defendants argued (1) "that

the release of claims in the Settlement [Agreement], signed by both Defendants and the Victims, precluded restitution as a matter of law"; and (2) "that the consideration the Victims received as part of the Settlement [Agreement] should have been taken into account in the court's restitution order." *Id.* ¶ 80. We were persuaded by neither argument and affirmed the restitution order. *Id.* ¶ 99.

¶7     Relying on our Supreme Court's decision in *State v. Laycock*, 2009 UT 53, 214 P.3d 104, we determined Defendants' first argument to be unavailing because the State was not a party to the Settlement Agreement, and therefore "the State's interests [in seeking restitution] were not foreclosed by the release." *Bruun I*, 2017 UT App 182, ¶ 86. And regarding Defendants' second argument, we held it was not an abuse of discretion for the district court to determine that evidence of the Property's value was too speculative and unreliable to conclude that return of the Property necessarily compensated Victims in full for the unauthorized checks, *id.* ¶ 98, and that "Defendants ha[d] also failed to persuade us that the trial court's actual restitution award amounted to a double recovery," *id.* ¶ 94.

¶8     During the pendency of *Bruun I*, Defendants moved the district court for an order of satisfaction of judgment pursuant to rule 58B of the Utah Rules of Civil Procedure. They argued that because the Settlement Agreement referenced the 12 checks that were the subject of the restitution order and included an express release of Victims' claims concerning the same, they were entitled to an order of satisfaction of judgment once the complete restitution order was entered as a judgment on the civil docket. *See* Utah Code Ann. § 77-38a-401(1) (LexisNexis Supp. 2018). After recognizing that Defendants' motion involved "issues of law which are of first impression," the district court denied the motion. The court's denial of this motion is the target of Defendants' current appeal.

## ISSUE AND STANDARD OF REVIEW

¶9     Whether a *prior* settlement agreement can satisfy an order of complete restitution after the restitution order is entered as a judgment on the civil docket presents a question of law, which we review for correctness. *See Pilot v. Hill*, 2019 UT 10, ¶ 9, 437 P.3d 362 ("[P]ure question[s] of law" are reviewed "for correctness.").

## ANALYSIS

¶10     The Crime Victims Restitution Act (the Act) requires a district court to "determine complete restitution and court-ordered restitution,"[3] Utah Code Ann. § 77-38a-302(2) (LexisNexis 2017), and to subsequently "enter an order of complete restitution . . . on the civil judgment docket," *id.* § 77-38a-401(1) (Supp. 2018). Such an order "shall be considered

---

3. "Complete restitution is restitution necessary to compensate a victim for *all* losses caused by the defendant, taking into account all relevant facts," including those facts enumerated in Utah Code section 77-38a-302(5)(b). *State v. Mooers*, 2017 UT 36, ¶ 9, 424 P.3d 1 (emphasis added) (quotation simplified). In contrast, court-ordered restitution "is the restitution the court having criminal jurisdiction orders the defendant to pay as a part of the criminal sentence." *Id.* ¶ 10 (quotation simplified). In addition to considering the factors for complete restitution, district courts take the defendant's particular circumstances into consideration when determining the amount of court-ordered restitution. *Id.* ¶ 11. *See also* Utah Code Ann. § 77-38a-302(5)(c) (LexisNexis 2017) (listing the additional factors a district court must consider when determining court-ordered restitution). As a subset of complete restitution, court-ordered restitution must be either equal to or less than the complete restitution amount. *See Mooers*, 2017 UT 36, ¶¶ 11, 19 n.4.

a legal judgment, *enforceable* under the Utah Rules of Civil Procedure," thereby affording the victim or the Department of Corrections the rights to "enforce the restitution order as judgment creditor under [those same rules]." *Id.* § 77-38a-401(2) (emphasis added).[4]

¶11     Citing this provision of the Act and relying on rule 58B(b) of the Utah Rules of Civil Procedure, Defendants argue that once the complete restitution order was reduced to a civil judgment, they were entitled to an order of satisfaction of that judgment. *See* Utah R. Civ. P. 58B(b) (providing that a district court "may, upon motion and satisfactory proof, enter an order declaring [a] judgment satisfied"). Specifically, Defendants contend that their compliance with the terms of the Settlement Agreement—the one they and Victims executed two years prior to the commencement of criminal proceedings and which referenced the 12 checks Defendants wrote on the Tivoli account—served as "satisfactory proof" that the judgment had been satisfied. Defendants assert that through their efforts to re-zone the Property, its value increased between the time Victims sold it to Equity Partners and the time it was conveyed back to Victims pursuant to the Settlement Agreement, and that this increase in value was sufficient to satisfy the complete restitution amount of $189,574.33.[5]

---

4. In contrast, unlike complete restitution orders that are enforceable as civil judgments, "a violation of court-ordered restitution subjects the defendant to criminal enforcement mechanisms such as contempt of court." *Mooers*, 2017 UT 36, ¶ 18 n.3.

5. But as we will discuss *infra*, the district court expressly rejected this contention when determining the complete restitution amount, deeming the evidence presented regarding

(continued…)

¶12    Defendants correctly state that upon agreement between the parties, a judgment debtor's obligation to the judgment creditor may be satisfied under rule 58B(b) of the Utah Rules of Civil Procedure by means other than direct monetary payment. *See Red Bridge Capital LLC v. Dos Lagos LLC*, 2016 UT App 162, ¶ 10 n.2, 381 P.3d 1147 (stating that rule 58B(b) "require[s] only 'satisfactory proof' that a judgment has been satisfied," and "[w]here [a] judgment debtor can demonstrate that . . . the parties had agreed to satisfaction by means other than simple payment, evidence that the judgment debtor met its obligations under the parties' agreement may provide satisfactory proof that the judgment has been satisfied"). But that rule contemplates agreement between the parties *after* judgment is entered. We are still left with the task of determining whether the Act permits a settlement entered into *prior* to entry of a restitution judgment on the civil docket to satisfy that judgment. *See infra* ¶ 16.

¶13    In support of their position, Defendants cite *State v. Laycock*, 2009 UT 53, 214 P.3d 104. In *Laycock*, our Supreme Court addressed the issue of whether a civil settlement between a defendant and a victim barred the imposition of restitution in a subsequent criminal action arising from the same incident. *See id.* ¶ 12. The Court determined that such civil settlements did not bar the imposition of restitution by the district court because the controversy between the State and the defendant was not finished and the twin purposes of restitution, i.e., to compensate the victim and to act as a deterrent, had not been satisfied. *See id.* ¶ 18. But, without expressly deciding, the Court concluded by musing as to the effect the settlement agreement would have on the order of complete restitution once it was entered as a judgment on the civil docket, stating:

---

(…continued)
the pre- and post-settlement values of the Property to be too speculative.

> In the context of this case, once [the district court] completes the task assigned to [it] on remand—to determine complete restitution—that sum will be reduced to a civil judgment, a judgment that may only be enforced through the Utah Rules of Civil Procedure. At that point, a serious question will arise over whether [the victim] may execute on her judgment when she has released [the defendant] from all of her claims against him. While this question is one we need not answer today, we likely will be required to answer it someday. *It would appear that under our statutory scheme, the rationale we used to reject [the defendant's] mootness claim may lose much of its persuasive force after a civil judgment is entered.*

*Id.* ¶ 33 (emphasis added). Defendants rely on the emphasized language to support the contention that the discharge of their responsibilities under the Settlement Agreement likewise satisfied the civil judgment entered against them at the conclusion of their criminal case.

¶14   But, as Defendants acknowledge, the comments shared by our Supreme Court amount to nonbinding dicta. Specifically, because the Court merely speculated on the legal issue and expressly reserved it for future resolution, the comments to which Defendants direct our attention represent no more than "a remark or expression of opinion that [the C]ourt uttered as an aside," rendering it nonbinding obiter dicta.[6] *See Ortega v.*

---

6. "Dicta normally comes in two varieties: obiter dicta and judicial dicta." *Ortega v. Ridgewood Estates LLC*, 2016 UT App 131, ¶ 14 n.4, 379 P.3d 18 (quotation simplified). Although "[b]oth terms refer to judicial statements that are unnecessary to the resolution of the case," obiter dicta is nonbinding whereas

(continued…)

*Ridgewood Estates LLC*, 2016 UT App 131, ¶ 14 n.4, 379 P.3d 18 (quotation simplified). *Cf. State v. Ogden*, 2018 UT 8, ¶ 42, 416 P.3d 1132 (stating that another of its observations in *Laycock*—"that matters of negligence, proximate cause and the amount of resulting damages are best left to civil litigation"—was not an issue the Court was asked to address in *Laycock*, rendering the statement dicta, and explaining that, as a result, "that statement should not be read to suggest that [the Court] had concluded the [Act] requires something other than proximate causation" when determining the complete restitution amount) (quotation simplified). And having considered the merits of the parties' arguments, we now conclude that *prior* settlement agreements that do not result in a double recovery by the victim cannot preclude enforcement of restitution judgments.

¶15 We begin by turning to the plain language of the Act. *See Ogden*, 2018 UT 8, ¶ 31. Section 401 provides that after the district court enters an order of complete restitution on the civil docket, "[t]he order shall be considered a legal judgment, *enforceable* under the Utah Rules of Civil Procedure." Utah Code Ann. § 77-38a-401(2) (LexisNexis Supp. 2018) (emphasis added). The Legislature's choice of the word "enforceable"—as opposed to a more neutral word, such as "governed"—provides guidance

---

(…continued)
"lower courts are obliged to follow any judicial dicta that may be announced by the higher court." *Id.* (quotation simplified). "Obiter dicta refers to a remark or expression of opinion that a court uttered as an aside," and includes "statement[s] made by a court for use in argument, illustration, analogy or suggestion." *Id.* (quotation simplified). Judicial dicta, on the other hand, encompasses "statement[s] deliberately made for the guidance of the bench and bar upon a point of statutory construction not theretofore considered" by the higher court. *Id.* (quotation simplified).

to our resolution of this issue. "Enforceable" is an adjective that stems from the verb "to enforce," which means "to compel obedience to [something]" or "[l]oosely, to compel a person to pay damages." *Enforce*, Black's Law Dictionary 608 (9th ed. 2009). *See also Enforce*, New Oxford American Dictionary 574 (3d ed. 2010) (defining "enforce" as the act of "compel[ling] observance of or compliance with [something]" or "caus[ing] (something) to happen by necessity or force"); *Enforcement*, Black's Law Dictionary 608 (9th ed. 2009) (defining "enforcement" as "[t]he act or process of compelling compliance"). The Legislature's choice of the word "enforceable" therefore emphasizes the victim's right to seek to collect on the civil judgment under the Utah Rules of Civil Procedure rather than recognizing the defendant's right to seek relief from the judgment under the rules or to have them more generally apply.[7]

¶16 And insofar as the Act directs us to the Utah Rules of Civil Procedure, those rules do not contemplate the situation presented by this case. Although parties in a civil proceeding may certainly enter into settlement agreements *after* a plaintiff has obtained a judgment against a defendant,[8] *see* Utah R. Civ. P.

---

7. As a natural corollary, the Legislature's choice of the word "enforceable" suggests that rather than the entirety of the Utah Rules of Civil Procedure, the Legislature intended only the rules that specifically govern the enforcement of judgments to apply to complete restitution judgments. *See, e.g.*, Utah R. Civ. P. 64C, 64D, 64E, 66, 69A, & 69C.

8. A plaintiff might opt to settle with a defendant after a district court's entry of judgment for less than the judgment amount in order to obtain a prompt payment rather than having to proceed with enforcement efforts. The plaintiff might also wish to avoid any potential costs that the plaintiff might incur as a result of

(continued…)

58B(b), a settlement between the parties *prior* to formal, judicial resolution of a civil case would result in dismissal of the case should an action thereafter be brought and should the defendant choose to raise settlement as an affirmative defense, *see id.* R. 8(c) (including "accord and satisfaction" and "release" as among the available affirmative defenses), thereby necessarily foreclosing an entry of judgment. The present case involves *both* an executed settlement agreement that expressly referenced the 12 checks that formed the basis of the restitution award and the subsequent entry of judgment for the complete restitution amount. Other than in the restitution context, which represents "a unique animal, existing at the convergence of the civil and criminal worlds," *State v. Mooers*, 2017 UT 36, ¶ 7, 424 P.3d 1, we are hard-pressed to envision in the civil context a situation that encompasses a prior settlement agreement that has been fully satisfied and a subsequent civil judgment, both of which purport to fully resolve the same claims between the same parties. As such, the Utah Rules of Civil Procedure provide little assistance to our resolution of this case.

¶17   Admittedly, although the Act's plain language provides some guidance, such guidance is limited and the Act is largely silent on the particular issue presented in this case. "When a statute is silent regarding particular circumstances and we determine that such a gap was not the intent of the legislature, we must determine the best rule of law to ensure that the statute is applied uniformly." *Cox v. Laycock*, 2015 UT 20, ¶ 42, 345 P.3d 689 (quotation simplified). In doing so, we must "analyze the act in its entirety and harmonize its provisions in accordance with the legislative intent and purpose." *Id.* (quotation simplified). *See also Ogden*, 2018 UT 8, ¶ 31 ("When interpreting a statute, it is

_____

(…continued)
collecting on the judgment or even to avoid altogether the uncertainties that surround the collection process.

axiomatic that this court's primary goal is to give effect to the legislature's intent in light of the purpose that the statute was meant to achieve.") (quotation simplified).

¶18 The Act was enacted to serve two well-recognized purposes. The first is "to compensate the victim for pecuniary damages."[9] *State v. Laycock*, 2009 UT 53, ¶ 18, 214 P.3d 104. *See State v. England*, 2017 UT App 170, ¶ 13, 405 P.3d 848 ("The well-settled remedial purpose of our restitution statute is to compensate victims for the harm caused by a defendant and to spare victims the time, expense, and emotional difficulties of

---

9. The current version of the Act defines "pecuniary damages" as all demonstrable economic injury, whether or not yet incurred, including those which a person could recover in a civil action arising out of the facts or events constituting the defendant's criminal activities and includes the fair market value of property taken, destroyed, broken, or otherwise harmed, and losses, including lost earnings, including those and other travel expenses reasonably incurred as a result of participation in criminal proceedings, and medical and other expenses, but excludes punitive or exemplary damages and pain and suffering.

Utah Code Ann. § 77-38a-102(6) (LexisNexis 2017).

As we recognized in *Bruun I*, this definition differs slightly from the one in effect at the time the district court determined the restitution amounts in the current case. *See State v. Bruun*, 2017 UT App 182, ¶ 81, 405 P.3d 905. But because Defendants' argument that the district court's restitution award amounted to a double recovery for Victims is barred by the doctrine of res judicata, as hereinafter explained, any change to the definition of "pecuniary damages" is of no import in this case.

separate civil litigation to recover their damages from the defendant.") (quotation simplified). However, in promoting that purpose, courts should limit restitution "to that amount which is necessary to compensate a victim for losses caused by the defendant" and be careful not "to grant a windfall to the victim." *England*, 2017 UT App 170, ¶ 15 (quotation simplified). And the second purpose, "as a part of a criminal sanction, is to rehabilitate and deter the defendant, and others, from future illegal behavior." *Laycock*, 2009 UT 53, ¶ 18. We conclude that neither purpose is served by permitting a prior settlement agreement that does not fully compensate a victim for the pecuniary damages caused by a defendant to satisfy a subsequent judgment for complete restitution.

¶19 In *Laycock*, our Supreme Court relied heavily on the dual purposes of the Act in holding that a prior settlement agreement between defendant and victim could not foreclose the imposition of complete restitution by the district court. *See id.* (rejecting the defendant's argument of mootness "because the controversy between the parties [was] not over and the dual purposes of restitution ha[d] not been fulfilled") (quotation simplified). And we struggle to see how the dual purposes of restitution would be fulfilled by the entry of an order of complete restitution as a judgment on the civil docket if it were to immediately be deemed satisfied by an earlier settlement that compensated the victim for a sum less than the victim's total loss. Quite the contrary, any compensatory, rehabilitative, or deterrent aims of the Act would be only symbolically met, if not undermined, by such a scheme.

¶20 It must be noted that settlement agreements, typically the result of negotiation and compromise, often will not fully compensate victims for the pecuniary damages suffered by them, which complete restitution, by its very terms, is intended to do. *See* Utah Code Ann. § 77-38a-302(2)(a) (LexisNexis 2017) ("'Complete restitution' means restitution necessary to compensate a victim for *all* losses caused by the defendant.")

(emphasis added). As the State points out, "[p]arties settle for many reasons," including to avoid the cost and unpredictability of litigation, "to achieve the peace of mind that comes with finality sooner, rather than later," and to avoid the additional emotional toll a victim would potentially suffer by reason of ongoing civil litigation. As a result, victims might choose to cut their losses and agree to settlements that do not fully compensate them for their damages, thereby defeating the first purpose of the Act.

¶21　The second purpose of the Act—that of rehabilitation and deterrence—is likewise not fulfilled by Defendants' interpretation of the Act. "[O]rders of complete restitution, though technically entered on the civil docket, flow entirely from the criminal cases that give rise to them; they are not separate civil cases with a life outside of the criminal case." *State v. Mooers*, 2017 UT 36, ¶ 17, 424 P.3d 1. And by permitting a prior settlement agreement for less than the victims' total pecuniary loss to satisfy a complete restitution judgment, defendants could effectively avoid the full consequences of their crimes by cajoling vulnerable victims into entering into unfavorable settlement agreements prior to the district court's restitution determination. And given the purposes of the Act, it is highly unlikely that the Legislature intended such an outcome.

¶22　Based on the language of the Act providing that victims can *enforce* their restitution judgments pursuant to the Utah Rules of Civil Procedure, the lack of guidance from the rules themselves, and the well-recognized purposes the Act was enacted to promote, we hold that the Settlement Agreement will offset the district court's complete restitution award only to the extent that the settlement demonstrably compensated Victims for the pecuniary losses occasioned by the thefts of which Defendants were convicted. It is insufficient that the Settlement Agreement expressly referenced the 12 checks that provided the basis for Defendants' criminal convictions and restitution order. Even though the Settlement Agreement contained a purported

release of any claims Victims had resulting from the checks,[10] the Settlement Agreement must have actually compensated them for the pecuniary losses they suffered as a result of those unauthorized checks. As such, we next determine whether and to what extent the Settlement Agreement did so.

¶23 In their earlier appeal, Defendants argued that the Settlement Agreement and the restitution order amounted to double recovery for Victims. *See Bruun I*, 2017 UT App 182, ¶ 87, 405 P.3d 905. We held that the district court did not abuse its discretion in determining that evidence of the Property's value was too speculative and unreliable to form the basis for restitution. *See id.* ¶¶ 91–95, 98. *See also State v. Ogden*, 2018 UT 8, ¶ 52, 416 P.3d 1132 ("A trial court's restitution award must rely on a sufficient evidentiary basis. . . . [A]n award of damages based only on speculation cannot be upheld.") (quotation simplified). As such, "Defendants ha[d] . . . failed to persuade us that the trial court's actual restitution award amounted to a double recovery." *Bruun I*, 2017 UT App 182, ¶ 94. In light of our prior determination that the Settlement Agreement and restitution judgment did not doubly compensate Victims, Defendants are not entitled to offset the judgment by any

---

10. And to the extent the Settlement Agreement was used in an effort to curb Victims' participation in subsequent criminal proceedings, it would be void as against public policy. *See* 15 Grace McLane Giesel, *Corbin on Contracts* § 83.1, at 251 (Joseph M. Perillo ed., rev. ed. 2003) ("[A]ny bargain for the purpose of stifling a criminal prosecution, whether or not the bargain is criminal, is always contrary to public policy and unenforceable."). While the release may well have precluded Victims from bringing a civil action to recover the amount of the unauthorized checks, the release was not effective to preclude Victims from complaining to the criminal authorities or benefitting from their rights under the Act.

amount and are jointly and severally obligated to pay Victims the full restitution judgment in the amount of $189,574.33.

CONCLUSION

¶24    Having considered the language and purposes of the Crime Victims Restitution Act, we conclude that prior settlement agreements do not satisfy complete restitution judgments, except to the extent that the settlements and judgments would demonstrably result in double recovery. Because the Settlement Agreement Victims entered into with Defendants has not been shown to be duplicative of the restitution judgment, Defendants are not entitled to satisfaction of the judgment, partial or otherwise.

¶25    Affirmed.

——————