**2022 UT 2**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

JAMES DIDERICKSON and ALLAN BRUUN,
*Petitioners,*

*v.*

STATE OF UTAH,
*Respondent.*

No. 20190478
Heard September 13, 2021
Filed January 27, 2022

On Certiorari to the Utah Court of Appeals

Attorneys:
Karra J. Porter, Kristen C. Kiburtz, Salt Lake City,
for petitioner Diderickson

Clifton W. Thompson, Bountiful, for petitioner Bruun

Jeffrey S. Gray, Jacob S. Taylor, Sean D. Reyes, Salt Lake City,
for respondent

JUSTICE PEARCE authored the opinion of the Court in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE PETERSEN, and JUDGE WILCOX joined.

Having recused himself, JUSTICE HIMONAS does not participate
herein; JUDGE JEFFREY C. WILCOX sat.

JUSTICE PEARCE, opinion of the Court:

## INTRODUCTION

¶1 A jury convicted James Diderickson and Allan Bruun of twelve counts of theft in connection with a real estate deal they entered into with Kerry and Bobbie Posey. As part of Diderickson's and Bruun's sentences, a district court considered how much to order for complete and court-ordered restitution.

¶2 Diderickson and Bruun argued to the district court that they should not have to pay restitution because they had settled the Poseys' civil claims against them before they had been criminally charged. As part of that settlement, the Poseys released all claims

they possessed against Diderickson and Bruun. Diderickson and Bruun also argued that the district court could not base a restitution order on claims for which the Poseys had already been remunerated. The district court disagreed with Diderickson's and Brunn's contention that the Poseys had been compensated and ordered restitution. The court of appeals affirmed, and the complete restitution order transformed into a civil judgment against Diderickson and Bruun.

¶3    Diderickson and Bruun then filed a satisfaction of judgment in hopes of extinguishing that judgment. The district court rejected their attempt, and the court of appeals again affirmed. Diderickson and Bruun petitioned for certiorari arguing that the court of appeals erred when it concluded that a victim's pre-conviction release of claims offsets a complete restitution order only to the extent it "demonstrably compensates" the victim. Diderickson and Bruun also assert that the court of appeals incorrectly concluded that they were not entitled to any offset based on the value the settlement agreement bestowed upon the Poseys. We affirm the court of appeals, but we remand to allow the district court to correct a math error that the State highlighted in its briefing.

## BACKGROUND

¶4    The Poseys owned a twenty-nine-acre piece of undeveloped land that they hoped to develop to fund their retirement. Allan Bruun and James Diderickson (Petitioners) approached the Poseys with a plan to take the Poseys' undeveloped land and turn it into a mix of commercial and residential properties.[1] This inspired the Poseys to sell the land to Equity Partners, LLC, a limited liability company the Petitioners owned. In exchange, the Poseys received a stake in a newly formed company, Tivoli Properties, LLC (Tivoli), and a promise of monthly payments.

_____

[1] We note that while this appeal was pending, James Diderickson passed away. Diderickson's counsel informed us that no personal representative had been appointed for Diderickson's estate and requested that the appeal proceed. We received no objection from the other parties to the appeal. Utah Rule of Appellate Procedure 38(a) allows that if a deceased party has no representative, "proceedings shall then be had as the court may direct." In the absence of an objection from the other parties, we took Diderickson's counsel's suggestion.

¶5   As part of the transaction, Petitioners took out a $750,000 high-interest loan to fund the development, using the property as collateral. Petitioners used approximately $350,000 of the loan to pay off the existing mortgage and taxes on the property and deposited the remaining balance in Tivoli's operating account.

¶6   Petitioners initially met their monthly obligations to the Poseys, and the real estate venture seemed to move smoothly. Six months after the deal was signed, however, Petitioners told the Poseys that they could no longer afford the monthly payments. The Poseys wondered where the $400,000 had gone and asked for an accounting. Petitioners initially evaded the request.

¶7   The Poseys contacted the bank and discovered Tivoli's account balance had been reduced from about $400,000 to $1,083. Bank records indicated that Petitioners had withdrawn money on multiple occasions to cover expenses unrelated to the real estate venture with the Poseys.

¶8   After the Poseys learned about Tivoli's dire financial straits, Petitioners asked the Poseys to sign a $100,000 extension of the loan and indicated that without the extension the loan would foreclose. The Poseys demurred and instead negotiated an end of their relationship with the Petitioners. This culminated in a settlement agreement.

¶9   As part of the settlement, Petitioners gave title to the property back to the Poseys. Petitioners also paid the Poseys $174,000. In return, the Poseys paid $25,000 to Equity Partners and released the company, and Petitioners, of all claims related to the transaction and the management of Tivoli.

¶10 Approximately two and a half years after the Poseys and Petitioners entered into the settlement agreement, the State criminally charged Petitioners for using Tivoli's funds on projects unrelated to the development of the Poseys' property. A jury convicted Petitioners on twelve counts of theft and one count of engaging in a pattern of unlawful activity. Each count of theft related to a separate check Petitioners had used on unrelated projects.

¶11 The district court ordered a hearing to determine the size of complete and court-ordered restitution.[2] Before the hearing,

_____

[2] The district court entered the restitution order in 2014, pursuant to the Crime Victims Restitution Act, Utah Code section 77-38a-101–

(continued . . .)

Petitioners submitted a brief in which they made their position on restitution clear. According to Petitioners, the "Court's task [was] simple. The Poseys [were] limited . . . to a recovery of zero dollars ($0.00), as they entered into a Settlement Agreement with [Petitioners]." Petitioners emphasized this argument at the restitution hearing, explaining that because of the settlement agreement, there were "two independent reasons" why the court must find Petitioners owed no restitution.

¶12 Petitioners first argued that the court must conclude that there was no need for court-ordered restitution because the settlement agreement had already compensated the Poseys for any harm their conduct had caused. Petitioners next contended that, when fixing the amount of court-ordered restitution, a district court has discretion to award only up to the amount of complete restitution — an amount Petitioner asserted must equal zero.

¶13 More specifically, Petitioners explained that the settlement agreement had already repaired the harm they had inflicted on the Poseys because Petitioners had greatly increased the value of the land by securing county approval for the proposed development. Petitioners also valued the property that had been returned to the Poseys based on the valuation of a small piece of the property that Petitioners had sold. Petitioners argued that the increase in value more than compensated the Poseys for the funds Petitioners had misspent. Petitioners claimed that the court should therefore conclude that the Poseys had been made whole and that complete restitution equaled zero dollars.[3]

---

601. The act was repealed in July 2021 and replaced by the Crime Victims Restitution Act, Utah Code section 77-38b-101–402. The parties cited versions of the act that predate the 2021 repeal and replace. No party argued that the revised act has any bearing on the outcome of their dispute. This opinion applies and interprets the version of the statute in effect when the restitution judgment was entered.

[3] Petitioners read the entire release section of the settlement agreement into the record. The release states that

> The Parties mutually release . . . all actions, claims,
> demands, damages, obligations, liabilities controversies
> and executions of any kind or nature whatsoever,
> whether known or unknown, which have arisen, or

(continued . . .)

¶14 The State countered that Petitioners' valuation was speculative and based upon insufficient data. The State instead pressed that restitution should be based on the total amount the Poseys were to be paid under the purchase agreement. The State reasoned that the purchase agreement represented the price an actual buyer had been willing to pay for the entire parcel. The State additionally argued that the Poseys had expected to receive $3.5 million from the transaction and that they would have received it but for the Petitioners' malfeasance. Using the $3.5 million figure as a baseline, the State discounted what the Poseys received in the settlement and proposed $1,932,369 as the appropriate amount of restitution.

¶15 The court noted that it was "somewhat persuaded" that the settlement agreement had provided partial compensation to the Poseys. The court reasoned that, at the very least, the Poseys "thought they were getting a fair deal out of it at that point." Accordingly, the court did not award the $1,932,369 in restitution the State sought.

¶16 But the court was also not persuaded by Petitioners' arguments. The district court concluded that any increase in value of the Poseys' land flowing from Petitioners' efforts to prepare it for development was speculative and could not serve as persuasive evidence of an offset of the harm Petitioners had caused by depleting Tivoli's bank account for unrelated expenses. Instead, the court decided the best way to calculate the Poseys' losses was to rely on the

---

which may arise for reason of money received, management of funds, management actions, or payments made as designated and described in the Tivoli Properties, LLC, Operating Agreement and the Real estate Purchase Agreement associated with the property, as managers, buyers, sellers, consultants, agents, employees, representatives, owners, members, affiliates, contractors, associates, or any other affiliated operative from the first day of the world, including this day and each day thereafter, this release of claims includes but is not limited to the payments to and receipts by persons and entities identified on the schedule of questioned payments attached hereto as Exhibit B.

jury's finding that the sum of the twelve checks represented the amount of money Petitioners stole from the Poseys. And the court chose to base restitution on those checks. The district court accordingly ordered $189,574.33 in restitution.[4]

¶17 Petitioners appealed the restitution order. Before the court of appeals, they argued that the settlement agreement barred the entry of a restitution order. *State v. Bruun* (*Bruun I*), 2017 UT App 182, ¶ 82, 405 P.3d 905. They also contended that even if the settlement agreement did not prohibit restitution entirely, the restitution order would lead to a double recovery because the settlement agreement had already compensated the Poseys. *Id.* ¶ 87.

¶18 The court of appeals disagreed and concluded that Utah caselaw indicates that "a civil settlement and release of claims d[oes] not bar the district court from imposing restitution as part of the criminal sentence." *Id.* ¶ 85. The court of appeals was likewise unmoved by Petitioners' double recovery argument. It held that in "the case of restitution, a reviewing court will not disturb a district court's determination unless the court exceeds the authority prescribed by law or abuses its discretion." *Id.* ¶ 87 (quoting *State v. Laycock*, 2009 UT 53, ¶ 10, 214 P.3d 104). The court of appeals ruled it could not fault the district court for basing its restitution calculation on the stolen checks nor for rejecting Petitioners' claim that their debt was paid based on various property valuations, which the district court deemed unreliable. "It is well within a district court's broad discretion in determining criminal restitution to reject a party's valuation contentions on the basis of evidentiary concerns." *Id.* ¶ 95.

¶19 While their appeal in *Bruun I* was pending, Petitioners filed a motion for satisfaction of judgment under Utah Rule of Civil Procedure 58B(b).[5] Petitioners claimed that because the settlement agreement specifically mentioned the twelve improperly drawn checks that the district court used to calculate complete compensation, they were entitled to a satisfaction of judgment.

_____

[4] The State notes that the district court miscalculated the sum of the checks and set restitution at $189,574.33 when it should have been $188,854.33. We remand to allow the district court to correct the error.

[5] Utah Rule of Civil Procedure 58B(b) provides that the "court in which the judgment was first entered may, upon motion and satisfactory proof, enter an order declaring the judgment satisfied."

Petitioners argued that one "consequence of the settlement and release . . . is that all obligations [Petitioners owed] to the Poseys with regard to the amounts of the checks have been fulfilled."

¶20 The State responded that Petitioners

> are making the exact same argument that they presented at the restitution hearing—that the settlement agreement precludes restitution. The District Court rejected this argument when it set restitution in the complete and court-ordered amount of $189,574.33 . . . . They cannot now come back to the District Court to repeat arguments that they previously made.

The district court "d[id] not find sufficient reason to negate its previous rulings and order regarding restitution" and denied Petitioners' motion.

¶21 Petitioners appealed the district court's denial of the motion. Before the court of appeals, Petitioners argued that "after a complete restitution judgment is entered, they are entitled to credit thereon for compensation provided in a civil settlement that covers the same items included in the restitution judgment." The court of appeals pointed Petitioners back to its holding in *Bruun I* and indicated that it had already answered the question of whether the settlement agreement compensated the Poseys. The court explained:

> In light of our prior determination that the Settlement Agreement and restitution judgment did not doubly compensate [the Poseys], [Petitioners] are not entitled to offset the judgment by any amount and are jointly and severally obligated to pay [the Poseys] the full restitution judgment in the amount of $ 189,574.33.

*State v. Bruun* (*Bruun II*), 2019 UT App 77, ¶ 23, 443 P.3d 756.

## ISSUES AND STANDARD OF REVIEW

¶22 We granted certiorari on two issues. Petitioners first ask us to review the court of appeals' affirmance of the district court decision not to grant Petitioners' motion for satisfaction of judgment. Whether a prior settlement agreement can satisfy an order of complete restitution after the restitution order is entered as a judgment on the civil docket presents a question of law, which we review for correctness. *See Pilot v. Hill*, 2019 UT 10, ¶ 9, 437 P.3d 362 (noting we review "a pure question of law[] for correctness").

¶23 The second issue questions whether the restitution amount should have been reduced based on the settlement agreement. The court of appeals concluded it did not. "On certiorari, we review the court of appeals' decision for correctness, focusing on whether that court correctly reviewed the trial court's decision under the appropriate standard of review." *Cheek v. Iron Cnty. Att'y*, 2019 UT 50, ¶ 9, 448 P.3d 1236 (citation omitted). In other words, "[i]n reviewing the court of appeals' decision[,] we apply the same standard of review that it would apply in reviewing the decision of the district court." *Est. of Faucheaux v. City of Provo*, 2019 UT 41, ¶ 9, 449 P.3d 112.

## ANALYSIS

### I. THE COURT OF APPEALS CORRECTLY CONCLUDED THAT PETITIONERS' PRE-RESTITUTION ORDER SETTLEMENT AGREEMENT DOES NOT ENTITLE THEM TO A SATISFACTION OF JUDGMENT

¶24 The district court denied Petitioners' motion for a satisfaction of judgment, holding that there was not "sufficient reason to negate its previous rulings and order regarding restitution." Petitioners appealed the denial and argued that the settlement agreement included compensation for the checks the district court relied on to craft the restitution order. The court of appeals held that the restitution order did not result in double recovery and "prior settlement agreements that do not result in a double recovery by the victim cannot preclude enforcement of restitution judgments." *State v. Bruun* (*Bruun II*), 2019 UT App 77, ¶¶ 14, 23, 443 P.3d 756. The appellate court concluded that for a judgment to be satisfied by a prior settlement agreement, the defendant would need to show that the settlement "demonstrably compensated" victims for their losses. *Id.* ¶ 22. Petitioners argue that the court of appeals erred when it ruled that settlement agreements must "demonstrably compensate" victims because rule 58B of the Utah Rules of Civil Procedure allows for judgments, including those made under the Crime Victims Restitution Act, to be satisfied once defendants have shown "satisfactory proof."[6]

---

[6] Petitioners also argue that the court of appeals erred when it held that rule 58B can only be applied to a settlement agreement made after a judgment has been entered. *See State v. Bruun* (*Bruun II*), 2019 UT App 77, ¶ 16, 443 P.3d 756. And Petitioners dedicate a fair

(continued . . .)

¶25 Although not entirely clear, there appear to be two separate contentions bound up in Petitioners' argument. First, Petitioners suggest that the court of appeals applied a higher standard than the one rule 58B(b) requires. Second, Petitioners posit that, under the correctly articulated standard, they satisfied the judgment.

¶26 A restitution order made under the Crime Victims Restitution Act is "a legal judgment, enforceable under the Utah Rules of Civil Procedure," and has "the same affect [sic] and is subject to the same rules as a judgment in a civil action." UTAH CODE § 77-38a-401(2), (4) (2014), *repealed by* UTAH CODE § 77-38b-301. Under the Rules, a judgment debtor can be released from her debt through a satisfaction of judgment. A satisfaction of judgment is a legal determination indicating that "the controversy [has] become[] moot and the right of appeal is barred." *Hollingsworth v. Farmers Ins. Co.*, 655 P.2d 637, 639 (Utah 1982) (citations omitted). Utah Rule of Civil Procedure 58B(b) permits a satisfaction of a judgment to be entered in two ways—either by acknowledgment of the judgment creditor or by court order.

---

bit of ink to convincing us that the Utah Rules of Civil Procedure allow a pre-restitution order settlement agreement to satisfy a judgment based on a restitution order. Petitioners' argument oversimplifies the court of appeals' holding. We do not read the court of appeals' opinion as establishing such a bright-line rule.

The court of appeals noted that because of the unique way the Crime Victims Restitution Act straddles the criminal and civil worlds, it is hard to find an appropriate analogue in the civil context to guide what to do when a criminal defendant has, prior to his sentencing, entered into a settlement agreement with his victim. The court of appeals concluded that a settlement agreement, even one entered into prior to sentencing, could be used to offset a defendant's restitution if it "demonstrably compensated" the victim. We largely agree with this analysis (*see infra* ¶29), even if we agree with Petitioners that the court of appeals should be careful not to vary the words of the rule (*see infra* ¶28) and even if we have a slightly different take than the court of appeals on how this will likely play out in practice (*see infra* ¶42 n.9). We therefore reject Petitioners' contention that the Utah Rules of Civil Procedure demand a different outcome.

¶27 For satisfaction by acknowledgment, "the judgment creditor or the judgment creditor's attorney must file an acknowledgment of satisfaction in the court in which the judgment was entered" within twenty-eight days after full satisfaction of the judgment. UTAH R. CIV. P. 58B(a)(1). Otherwise, a satisfaction of judgment must be entered by court order. According to the Rules, "[t]he court in which the judgment was first entered may, upon motion and satisfactory proof, enter an order declaring the judgment satisfied." *Id.* 58B(b).

¶28 Petitioners' primary argument is that the court of appeals improperly applied a standard other than the "satisfactory proof" standard rule 58B(b) provides. And, indeed, the court of appeals did talk about a satisfaction of judgment being proper when a party had been "demonstrably compensated." Petitioners have a point when they note that "demonstrably compensated" could be read to suggest something other than "satisfactory proof." We "have acknowledged that variations in language might cause a court to stray from the appropriate test." *State v. Gallegos*, 2020 UT 19, ¶ 59, 463 P.3d 641. We encourage all courts, including our own, to be careful when reframing tests so that we do not subtly shift the inquiry from the language a statute or rule requires.

¶29 However, we do not see anything in the court of appeals' articulation of a creditor's burden under rule 58B(b) that caused it to lose sight of what the rule instructs. Petitioners certainly have not given us any reason to believe that the switch in verbiage caused the court of appeals to impose a higher burden than the rule requires. But we emphasize that the rule says what it says and that a satisfaction of judgment is proper when a party forwards "satisfactory proof" that the judgment has been paid.

¶30 Petitioners next argue that the court of appeals erred because, no matter how the standard is articulated, they have compensated the Poseys for the harm they suffered and are therefore entitled to a satisfaction of judgment. Petitioners aver that there is "no uncertainty" as to whether they have satisfied the restitution order because the "civil settlement include[d] the same 12 checks upon which the restitution judgment [was] based."

¶31 The problem with Petitioners' position is that they did not provide satisfactory proof to the district court that the settlement agreement satisfied the restitution order. Petitioners' proof that the restitution order had been satisfied was based on the same argument they have made at every possible opportunity: the settlement agreement referenced the misused checks, so the amounts paid

pursuant to the settlement agreement already compensated the Poseys for those checks. They raised this argument at the original restitution hearing, they raised it before the court of appeals when they appealed the restitution order, they raised it at the rule 58 hearing, they raised it before the court of appeals on the appeal of the denial of their motion for a satisfaction of judgment, and now they raise it before us. Unlike wine, some cheese, and most *Arrested Development* episodes, Petitioners' argument does not get better with age. The district court and court of appeals have rejected this argument every time Petitioners have advanced it.

¶32 We don't begrudge Petitioners their jeremiad. They obviously feel strongly that they entered into a settlement agreement with the Poseys that resolved any obligation they had to the Poseys. But the district court heard and rejected Petitioners' plea that the settlement agreement compensated the Poseys for their losses when it set the restitution amount. The court of appeals affirmed that determination. In light of that history, it was not error for the district court, when deciding whether the judgment had been satisfied, to stand by its previous conclusion that the settlement agreement did not fully compensate the Poseys. And if the settlement agreement did not fully compensate the Poseys for the losses the court determined they had suffered, Petitioners lacked satisfactory proof that the judgment based upon the restitution order had been satisfied. It was not error for the court of appeals to recognize this and affirm the district court's decision.

¶33 Put another way, Petitioners argued to the district court that restitution should be set at zero dollars because the increased value of the property they returned to the Poseys more than made up for the money that Petitioners had siphoned away from the project. The district court rejected that argument and set restitution at $189,574.33. The district court did that because it concluded that the consideration Petitioners gave pursuant to the settlement agreement did not fully compensate the Poseys.

¶34 Petitioners argued to the court of appeals that the district court erred when it failed to account for the settlement agreement. But the court of appeals was unmoved and affirmed the restitution order. The settlement agreement's impact on the amount of restitution was baked into the restitution order, and it was not error for the court of appeals to affirm that the district court's recognition of the settlement agreement was not satisfactory proof that the judgment had been satisfied.

¶35  Accordingly, we affirm the court of appeals' holding that the pre-restitution order settlement agreement did not entitle Petitioners to a satisfaction of the judgment.

## II. THE COURT OF APPEALS DID NOT ERR BY REFUSING TO OFFSET THE RESTITUTION ORDER BASED ON THE SETTLEMENT AGREEMENT

¶36  Petitioners also assert that the court of appeals erred when it declined to offset the judgment based on the consideration given as part of the settlement agreement. The court of appeals reasoned that "the district court did not abuse its discretion in determining that evidence of the Property's value was too speculative and unreliable to form the basis for restitution." *State v. Bruun* (*Bruun II*), 2019 UT App 77, ¶ 23, 443 P.3d 756. Accordingly, Petitioners were "not entitled to offset the judgment by any amount." *Id.*

¶37  This argument is just a variation on the theme of Petitioners' first argument. Petitioners want credit for the value they argue they conferred on the Poseys through the settlement agreement. As we have just discussed, the district court considered the settlement agreement's impact on the amount of restitution and took it into account when crafting the restitution order. The court of appeals affirmed that calculation in *State v. Brunn* (*Bruun I*), 2017 UT App 182, ¶ 99, 405 P.3d 905.

¶38 Petitioners argue for a rule that would permit a victim to release claims against a criminal defendant in a fashion that would bind a district court to respect the release when it comes to restitution. They argue such a rule would align with the Utah Rules of Civil Procedure and the way settlement agreements are handled in civil practice. But, as the court of appeals noted, the Rules "do not contemplate the situation presented by this case." *Bruun II*, 2019 UT App 77, ¶ 16. We agree with the court of appeals that the Rules are not much help in telling a court how to assess the effect of a pre-restitution order settlement agreement on the satisfaction of that restitution order. And there is nothing in the Crime Victims Restitution Act that speaks to the impact a settlement agreement has on court-ordered restitution either.

¶39  Many states interpret their restitution statutes to give district courts the latitude to decide the extent to which a settlement agreement compensates a victim. In North Carolina, for example, a district court may "credit [a defendant] for what she has already paid under [a] civil settlement agreement" before entering a restitution order. *State v. Williams*, 829 S.E.2d 518, 524 (N.C. Ct. App. 2019),

*review denied,* 833 S.E.2d 802 (N.C. 2019). The Indiana Supreme Court has held that "a trial court remains free to 'consider a civil settlement when deciding whether to impose a restitution order or the amount of restitution to order.'" *Haltom v. State,* 832 N.E.2d 969, 971 (Ind. 2005) (quoting *Crawford v. State,* 770 N.E.2d 775, 781 (Ind. 2002)). "This level of discretion," the court explained, "permits the trial court to order a greater amount in restitution to compensate a victim fully for damages and injuries not yet covered, or order less or no restitution at all to prevent the victim from receiving a windfall."[7] *Id.* at 971–72.

¶40 As we noted before, the Crime Victims Restitution Act does not contain the Legislature's express guidance as to what courts should do with pre-restitution order settlement agreements. In the absence of that guidance, the best solution is to fill that gap with the discretion the Act generally gives district courts to craft restitution orders that compensate victims. UTAH CODE § 77-38a-302(5) (2014), *repealed by* UTAH CODE § 77-38b-205. A settlement agreement that purports to resolve civil claims based upon criminal conduct can take several forms. It is not difficult to imagine that some can flow naturally from the same criminal scheme that caused the harm and not compensate the victim for her loss. Others might represent fair and just compensation for the harm committed.

¶41 In this matter, Petitioners were parties to a restitution hearing where they were given the opportunity to convince the district court that their settlement agreement compensated the Poseys. The district court considered those arguments and rejected them. The court of appeals affirmed that decision. We see nothing in the Crime Victims Restitution Act that dictates a contrary procedure or outcome.

¶42 And, as above, where the district court acted within the bounds of its discretion when it decided that the settlement agreement did not fully compensate the Poseys, the district court did

---

[7] We acknowledge that at least one court appears to have drawn the hard line that Petitioners want. The Minnesota Court of Appeals has concluded "that when an alleged victim has made a complete, valid civil settlement of all claims resulting from a criminal offense, the state is precluded from seeking restitution." *State v. Arends,* 786 N.W.2d 885, 889 (Minn. Ct. App. 2010).

not err when it concluded that the exact same settlement agreement did not entitle Petitioners to an offset.[8]

¶43 Petitioners resist this result and argue for a rule that would require courts to offset amounts paid under a settlement agreement to a victim. Although Petitioners do not come right out and say it directly, underlying their argument is the contention that private parties should be allowed to enter into settlement agreements that bind courts in criminal cases. Petitioners point to several policy reasons that weigh in favor of such a rule. They suggest that allowing a victim to negotiate a settlement agreement allows her to "replace an uncertain, future recovery with a certain, immediate recovery," "an additional source of leverage to negotiate a favorable settlement," the ability to avoid "potentially lengthy garnishment actions or other execution proceedings," "a sense of dignity and respect by making [the victim] the party in interest[,] and . . . a say in how and when any judgment in [her] favor may be collected."

¶44 Although we appreciate the difficulties the Act creates for defendants, allowing parties to enter settlement agreements that bind courts in criminal cases runs contrary to the policies that animate the

---

[8] The way we have envisioned the Act's operation necessitates a comment on something the court of appeals stated. The court of appeals held "that prior settlement agreements do not satisfy complete restitution judgments, except to the extent that the settlements and judgments would demonstrably result in double recovery." *State v. Bruun* (*Bruun II*), 2019 UT App 77, ¶ 24, 443 P.3d 756. While we concur with the lower court's holding, we cannot imagine a situation where a prior settlement agreement would lead to double recovery unless the district court abused its discretionary power given under the Crime Victims Restitution Act. District courts are instructed to consider "all relevant facts" when making restitution determinations. *See* UTAH CODE § 77-38a-302(5)(b) (2014), *repealed by* UTAH CODE § 77-38b-205. Thus, a district court acting within the confines of the statute would ensure it had considered all relevant facts and would not enter an order for restitution of a harm for which a victim had already been made whole. In this case, the district court analyzed whether the settlement agreement should be factored into the restitution order and deemed that the value of the land the Poseys received in the agreement was too speculative to serve as evidence that the harm had been made whole.

Crime Victims Restitution Act. As we have explained, the Act was enacted to serve two well-recognized purposes. *See State v. Laycock*, 2009 UT 53, ¶ 18, 214 P.3d 104. The first is "to compensate the victim for pecuniary damages." *Id.* And the second "is to rehabilitate and deter the defendant, and others, from future illegal behavior." *Id.* We agree with the court of appeals' conclusion that "neither purpose is served by permitting a prior settlement agreement that does not fully compensate a victim for the pecuniary damages caused by a defendant to satisfy a subsequent judgment for complete restitution."[9] *Bruun II*, 2019 UT App 77, ¶ 18.

¶45 Petitioners further argue that the court of appeals erred when it concluded that res judicata precluded the district court from considering the effect of the settlement agreement. Although the lower court's decision contains a footnote indicating the double recovery issue was barred by principles of res judicata, neither the court of appeals nor the district court analyzed the elements of claim or issue preclusion. *See id.* ¶ 18 n.9. Nor did they ultimately base their conclusions on res judicata.

¶46 Although the parties have briefed this as a res judicata question, we do not have a res judicata ruling to review. Moreover, regardless of whether res judicata prevented Petitioners from renewing their argument about the settlement agreement's impact on the restitution order, for the reasons discussed above, those arguments failed. This causes us to pass on considering the issue further.

### III. PETITIONERS INADEQUATELY BRIEFED ANY QUESTION CONCERNING THE IMPACT OF A RELEASE OF CLAIMS ON A VICTIM'S ABILITY TO ENFORCE A JUDGMENT BASED UPON A RESTITUTION ORDER

¶47 Petitioners hint at, but fail to develop, an additional argument. At a couple of points in their briefing, Petitioners suggest that the Poseys cannot enforce the judgment because they are contractually bound not to. That is, Petitioners aver that the release of claims that the Poseys gave as part of the settlement agreement

---

[9] Nor are we the only court to so conclude. Other courts have recognized that "private individuals should not be allowed to thwart the penal goals of the criminal justice system by entering into releases or settlements with wrongdoers." *Haltom*, 832 N.E.2d at 972 (citing *United States. v. Bearden*, 274 F.3d 1031, 1041 (6th Cir. 2001)).

prevents them from taking steps to enforce the judgment. Petitioners similarly argue that the State cannot enforce the judgment because, although the State can regularly enforce a judgment, it can only enforce judgments "on behalf of" the victim. Petitioners argue that the court of appeals erred because it failed to heed the "warning" this court issued in *State v. Laycock*, 2009 UT 53, 214 P.3d 104. Petitioners assert that *Laycock* held that "the rationale for permitting entry of a restitution judgment despite a civil settlement does not extend to execution of the entered judgment." Petitioners misunderstand *Laycock*.

¶48 In *Laycock*, we considered the question of whether a district court needed to determine both complete and court-ordered restitution if the parties had reached a civil settlement agreement. *Id.* ¶ 11.

¶49 By way of background, before the 2021 amendments, the Crime Victims Restitution Act required a judge to determine both "complete restitution" and "court-ordered restitution." UTAH CODE § 77-38a-302(2) (2014), *repealed by* UTAH CODE § 77-38b-205. To make its complete restitution determination, a court needed to assess the total amount required to compensate a victim for the harm the defendant caused. *Id.* The statute required the district court to account for a myriad of factors that could lower a defendant's overall monetary responsibility to victims. *Id.* § 77-38a-302(5)(b). After considering all relevant factors, the court then needed to enter the "court-ordered restitution" amount. *Id.* § 77-38a-302(5)(c)

¶50 In *Laycock*, the district court judge had declined to determine complete restitution because she believed several issues would be better handled in a civil trial with the rules of civil procedure providing superior fact-finding capabilities. *Laycock*, 2009 UT 53, ¶ 22. The State appealed, contending that the statute required a district court to determine complete restitution. *Id.* ¶ 20. The criminal defendant in the restitution case, as the real party in interest, filed a suggestion of mootness. *Id.* ¶ 6. He claimed that the civil settlement ought to "bar a district court from imposing restitution in a criminal action involving the same incident." *Id.* ¶ 12.

¶51 Addressing the defendant's mootness arguments, we rejected the notion that a civil settlement fulfilled the statutory purposes of restitution and explained that "restitution is mandated by statute and is a part of a criminal sanction imposed by the state." *Id.* ¶¶ 17–18. "[U]nlike an award of civil damages, . . . an award of restitution has a two-fold purpose." *Id.* "One purpose is to

compensate the victim for pecuniary damages . . . [and] [t]he other purpose . . . is to rehabilitate and deter the defendant, and others, from future illegal behavior." *Id.* We concluded that the statute required the district court to set both complete and court-ordered restitution even if the parties had settled their claim. *Id.* ¶ 24.

¶52  But we could not help ourselves from making an additional observation about the Crime Victims Restitution Act. We noted there, as we do here, *infra* ¶ 38, that the statute does not tell a court what to do with a settlement agreement. And we pontificated that "a serious question will arise over whether [a victim] may execute on her judgment when she has released [a defendant] from all of her claims against him." *Laycock*, 2009 UT 53, ¶ 33. Although *Laycock* did not require us to answer the question, we acknowledged that "the rationale we used" to explain why a settlement agreement did not make a restitution order moot "may lose much of its persuasive force after a civil judgment is entered." *Id.* ¶ 33.

¶53 Petitioners read our observation about an interesting question as a "warning" that the district court ignored. We do not fault Petitioners for raising the issue. We agree with what we said in *Laycock,* a serious question exists about whether a victim can enforce a judgment based on a restitution order if she has entered into a settlement agreement that releases her claims against the defendant/judgment debtor. Petitioners' problem is that they do not give us anything to help answer that question. As we stated in *Kidd*, a "party may not simply point toward a pile of sand and expect the court to build a castle." *Salt Lake City v. Kidd*, 2019 UT 4, ¶ 35, 435 P.3d 248.

¶54  Moreover, contrary to Petitioners' assertion, the court of appeals did not ignore the question we raised in *Laycock*. The court of appeals explained it away as dictum. *State v. Bruun* (*Bruun II*), 2019 UT App 77, ¶¶ 13–14, 443 P.3d 756. It also noted that we had "merely speculated on the legal issue and expressly reserved it for future resolution." *Id.* ¶ 14. This presented Petitioners with a golden opportunity to argue that our observation was not dictum and that we should answer the question. But Petitioners let that opportunity pass them by. In the absence of briefing and argument, we decline to take up the question and invite the legislature to consider addressing the issue in the statute.

## CONCLUSION

¶55  We affirm the court of appeals' holding that the settlement agreement Petitioners entered into with the Poseys does not entitle

them to a satisfaction of a judgment. The district court considered the settlement agreement's impact on the amount of restitution when it entered the restitution order, and it was not error for the district court to conclude Petitioners could not use that same rejected settlement agreement argument to satisfy a judgment based on that restitution order. We remand, however, to permit the district court to correct the clerical error, which listed check 1015 as $4,800 instead of $4,080.

————————